# United States Court of Appeals
# for the Federal Circuit

EREGLI DEMIR VE CELIK FABRIKALARI T.A.S.,

*Plaintiff-Appellant*

v.

UNITED STATES INTERNATIONAL TRADE
COMMISSION, UNITED STATES STEEL
CORPORATION, CLEVELAND-CLIFFS INC., STEEL
DYNAMICS, INC., SSAB ENTERPRISES LLC, NUCOR
CORPORATION,

*Defendants-Appellees*

Appeal from the United States Court of International Trade,
Case No. 1:22-cv-00351-GSK, Hon. Judge Gary S. Katzmann

**PLAINTIFF-APPELLANT'S NON-CONFIDENTIAL
OPENING BRIEF**

CHRISTINE M. STREATFEILD
JUSTIN R. BECKER
BAKER & MCKENZIE LLP
815 Connecticut Avenue, N.W.
Washington, DC 20006
(202) 835-6111
christine.streatfeild@bakermckenzie.com

*Counsel for Plaintiff-Appellant*

November 20, 2024

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 2024-2249 |
| **Short Case Caption** | Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC |
| **Filing Party/Entity** | Ereğli Demir ve Çelik Fabrikaları T.A.Ş. |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 11/20/2024

Signature: /s/ Christine M. Streatfeild

Name: Christine M. Streatfeild

| 1. **Represented Entities.** Fed. Cir. R. 47.4(a)(1). | 2. **Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | 3. **Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Ereğli Demir ve Çelik Fabrikaları T.A.Ş. ("Erdemir") | | See Attachment A. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☑  Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable   ☐ Additional pages attached

| | | |
|---|---|---|
| Christine M. Streatfeild, Principal, Baker & McKenzie LLP | | |
| Justin R. Becker, Partner, Baker & McKenzie LLP | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below)   ☐ No   ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable   ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## ATTACHMENT A

### (Parent Corporations and Stockholders Continued)

Plaintiff is a publicly traded company, listed on the stock exchange of Istanbul, Turkey.  Erdemir is 49.29 percent owned by Ataer Holding A.Ş., which is 100 percent owned by Ordu Yardimlaşma Kurumu ("OYAK"), which is a Turkish pension fund owned by its members, who are current and retired members of the Turkish armed forces; 47.63 percent of Erdemir's shares are traded on the Istanbul Stock Exchange; and 3.08 percent of its shares are held by the company as treasury stock.

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF RELATED CASES .................................................1

STATEMENT OF JURISDICTION........................................................1

STATEMENT OF ISSUES ...................................................................1

STATEMENT OF CASE AND FACTS ................................................2

    I.    The Original Investigations Result in Findings of No Subsidization By One Turkish Producer, Thereby Triggering an Exclusion of a Subset of Turkish Imports from the Material Injury Analysis by the Commission.........................................................................................3

    II.    Çolakoğlu Appeals – and Wins – on the Antidumping Determination in the Original Investigation, Which Should Then Reverse the Commission's Material Injury Finding .................................................6

    III.    Erdemir Moves the Commission to Give Effect to the Elimination of Çolakoğlu's Imports from the Universe of Subject Imports and the Commission Rejects All Three Avenues ...........................................7

        A.    Following the Conclusion of the Underlying Litigation, Erdemir Requests a Changed Circumstances Review for the Commission to Take into Account the Fundamental Change in the Record .........................................................................................8

        B.    Erdemir Fully Participates in the First Sunset Review and is Also Denied Relief in That Proceeding .....................................9

    IV.    The Proceedings Below........................................................................10

SUMMARY OF THE ARGUMENT ...................................................11

ARGUMENT ......................................................................................13

    I.    Standard of Review ...........................................................................13

    II.    Applicable Law .................................................................................14

        A.    The Commission Was Required By Law to Assess the Sunset Review Data By Excluding the Turkish Imports Found Not Dumped and When Done Turkish Imports Were Negligible ...16

        B.    The Sunset Review Was A Proper Vehicle for the Commission to Account for What Should Have Been a Prior No Material

i

          Injury Decision........................................................................19

    C.     The Commission's Cumulation Analysis Was Legally Flawed in
           That it Continued to Include Non-Subject Turkish Imports in
           the Cumulated Turkish Subject Imports ...................................20

CONCLUSION AND RELIEF SOUGHT ............................................................26

## CONFIDENTIAL MATERIAL OMMITTED

Pursuant to Federal Circuit Rule 25.1(e)(1)(B), this brief contains confidential material that has been omitted. The information omitted on page 22 describes specific numbers relating to import volume of non-subject imports by Turkish importer, Çolakoglu. The information omitted on page 24 describes specific numbers relating to Turkish hot-rolled steel imports. The information omitted on page 25 describes U.S. market trends relating to Turkish exports and provides numerical data relating to the same. The U.S. International Trade Commission redacted the same information from the final sunset review report (USITC Pub. 5380), pursuant to the administrative protective order in the underlying investigation.

# TABLE OF AUTHORITIES

*Page(s)*

**Administrative Decisions**

*Certain Hot-Rolled Flat-Rolled Carbon-Quality Steel Products From Brazil, Japan, and Russia, Inv. Nos. 701-TA-384 and 731-TA-806-808*, USITC Pub. 3767 (April 2005) .................................................................15

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, 81 Fed. Reg. 66996 (Int'l Trade Comm'n Sept. 29, 2016) .............................5, 17

*Certain Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Amended Final Affirmative Antidumping Determinations for Australia, the Republic of Korea, and the Republic of Turkey and Antidumping Duty Orders*, 81 Fed. Reg. 67962 (Dep't of Commerce Oct. 3, 2016) ..............................*passim*

*Certain Hot-Rolled Steel Flat Products From the Republic of Turkey: Final Affirmative Determination of Sales at Less Than Fair Value*, 81 Fed. Reg. 53428 (Dep't of Commerce Aug. 12, 2016) ...................................4

*Certain Hot-Rolled Steel Flat Products From Brazil, the Republic of Korea, and Turkey: Initiation of Countervailing Duty Investigations*, 80 Fed. Reg. 54267 (Dep't of Commerce Sept. 9, 2015) ..................................2, 3

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Initiation of Less-Than-Fair Value Investigations*, 80 Fed. Reg. 54261 (Dep't of Commerce Sept. 9, 2015) ....................................2

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom; Institution of Antidumping and Countervailing Duty Investigations and Scheduling of Preliminary Phase Investigations*, 80 Fed. Reg. 50028 (Int'l Trade Comm'n Aug. 18, 2015) ....................................2

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom,* Inv. Nos. 701-TA-545-547 & 731-TA-1291-1297 (Preliminary), USITC Pub. 4570 (Oct. 2015) .................................................................4

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545-547 & 731- TA-1291-1297, USITC Pub. 4638 (Sept. 2016).............................................................5, 17, 24

*Countervailing Duty Investigation of Certain Hot-Rolled Steel Flat Products From the Republic of Turkey: Final Affirmative Determination*, 81 Fed. Reg. 53433 (Dep't of Commerce Aug. 12, 2016).....................................4

*Denial of Request to Institute a Section 751(b) Review or Reconsideration Proceeding Concerning the Commission's Affirmative Determination in Inv. No. 731-TA-1296 (Final), Hot-Rolled Steel Flat Products from Turkey*, 87 Fed. Reg. 73331 (Nov. 29, 2022) .................................................................9

*Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545-547 and 731-TA-1291-1297 (Final) (Aug. 23, 2016) ......................................................................23

*Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom,* Inv. Nos. 701-TA-545-546 and 731-TA-1291-1297 (Review), and 731-TA-808 (Fourth Review), USITC Pub. 5380 (Nov. 2022) .................passim

*Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom*, 87 Fed. Reg. 74167 (Int'l Trade Comm'n Dec. 2, 2022)....................10

*Notice of Amended Final Determination, Amended Antidumping Duty Order; Notice of Revocation of Antidumping Duty Order in Part; and Discontinuation of the 2017-18 and 2018-19 Antidumping Duty Administrative Reviews, in Part*, 85 Fed. Reg. 29399 (Dep't of Commerce May 15, 2020) .........................7, 9, 11

*Views of the Commission*
    (Int'l Trade Comm'n Nov. 25, 2022)......................................................19, 22, 23

**Cases**

*Allegheny Ludlum Corp. v. United States*,
    475 F. Supp. 2d 1370 (Ct. Int'l Trade 2006)......................................................21

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC*,
    Case No. 24-2243 (Fed. Cir. 2024)................................................................1, 12

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC*,
    Case No. 24-2249 (Fed. Cir. 2024)......................................................................1

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. ITC*,
    No. 22-cv-00349 (Ct. Int'l Trade 2024)............................................................10

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. ITC*,
    No. 22-cv-00350 (Ct. Int'l Trade 2024)............................................................10

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. ITC*,
    No. 22-cv-00351 (Ct. Int'l Trade 2024)......................................................1, 10

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. United States*,
    308 F. Supp. 3d 1297 (Ct. Int'l Trade 2018)......................................................6

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. United States*,
    357 F. Supp. 3d 1325 (Ct. Int'l Trade 2018)......................................................6

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. United States*,
    415 F. Supp. 3d 1216 (Ct. Int'l Trade 2019)..................................................6, 7

*Ereğli Demir ve Çelik Fabrikaları T.A.S. v. United States*,
    435 F. Supp. 3d 1378 (Ct. Int'l Trade 2020)....................................7, 8, 9, 23

*Ereğli Demir ve Celik Fabrikalari T.A.S. v. United States*,
    Case No. 20-2003 (Fed. Cir. June 4, 2021)......................................................8

*Consol. Edison Co. v. NLRB*,
    305 U.S. 197 (1938)........................................................................................13

*Loper Bright Enterprises v. Raimondo*,
    144 S. Ct. 2244 (2024)....................................................................................13

*Nucor Corp. v. United States*,
   296 F. Supp. 3d 1276 (Ct. Int'l Trade 2018)..........................................6

*Universal Camera Corp. v. NRLB*,
   340 U.S. 474 (1951)..........................................13

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i)..........................................13

19 U.S.C. § 1673b(a)..........................................17

19 U.S.C. § 1673d(b)(1)(B)..........................................17

19 U.S.C. § 1675(c)..........................................1

19 U.S.C. § 1675(c)(1)..........................................25

19 U.S.C. § 1675(c)(1)(C)..........................................19

19 U.S.C. § 1675a(a)(1)..........................................9, 14

19 U.S.C. § 1675a(a)(1)(A)..........................................14

19 U.S.C. § 1675a(a)(1)(B)..........................................14

19 U.S.C. § 1675a(a)(1)(C)..........................................14

19 U.S.C. § 1675a(a)(2)..........................................14

19 U.S.C. § 1675a(a)(3)..........................................15

19 U.S.C. § 1675a(a)(4)..........................................15

19 U.S.C. §1675a(a)(5)..........................................15

19 U.S.C. § 1675a(a)(7)..........................................20, 25

19 U.S.C. § 1677(24)..........................................4

28 U.S.C. §1295(a)(5)..........................................1

28 U.S.C. §1295(a)(6)..........................................1

28 U.S.C. § 1581(c)..........................................1

## STATEMENT OF RELATED CASES

The following cases are currently pending before this Court and will directly affect or be directly affected by this Court's decision: *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC*, Case No. 24-2242 (Fed. Cir. 2024) and *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC*, Case No. 24-2243 (Fed. Cir. 2024). *See* Fed. Cir. R.47.5. The Court has ordered that all three appeals (including this case) be assigned to the same merits panel as companion cases. *See* ECF No. 21.

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §§ 1295(a)(5), (6). Plaintiff-Appellant Ereğli Demir ve Çelik Fabrikaları T.A.Ş. ("Erdemir") appeals from a judgment of the U.S. Court of International Trade ("CIT"), which upheld a five-year review determination under 28 U.S.C. § 1581(c). *See* Appx0001. The U.S. International Trade Commission (the "Commission") issued that review determination in accordance with Section 751(c) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1675(c). *See* Appx0028. Erdemir timely noticed its appeal on August 14, 2024. *See Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC*, Case No. 22-cv-00351, ECF No. 79.

## STATEMENT OF ISSUES

Whether the Commission's five-year review determination that revoking the antidumping duty order on *Hot-Rolled Steel Flat Products from Turkey* was likely

to lead to continuation or recurrence of dumping and material injury was supported by substantial evidence or otherwise in accordance with law when the Commission did not account for the impact of intervening litigation that removed one Turkish producer from the scope of the order, thereby fundamentally reshifting the conditions under which imports from Turkey compete during the review period.

## STATEMENT OF CASE AND FACTS

As one Court of International Trade judge summarized, "{t}his case requires the court to peer into a kaleidoscope of administrative determinations related to the issuance of antidumping and countervailing duty orders on imports of hot-rolled steel from Turkey." Appx0003. The facts begin in 2015 when the U.S. Department of Commerce ("Commerce") and the Commission initiated antidumping ("AD") and countervailing duty ("CVD") investigations into imports of hot-rolled steel from Turkey in August and September. *See Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom; Institution of Antidumping and Countervailing Duty Investigations and Scheduling of Preliminary Phase Investigations*, 80 Fed. Reg. 50028 (Int'l Trade Comm'n Aug. 18, 2015), Appx0046-47; *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Initiation of Less-Than-Fair Value Investigations*, 80 Fed. Reg. 54261 (Dep't of Commerce Sept. 9, 2015), Appx0048-54; *Certain Hot-Rolled Steel*

*Flat Products From Brazil, the Republic of Korea, and Turkey: Initiation of Countervailing Duty Investigations*, 80 Fed. Reg. 54267 (Dep't of Commerce Sept. 9, 2015), Appx0055-60.

While Commerce ultimately issued an AD order on relevant imports from Turkey following the investigation, it did not issue a companion CVD order because one Turkish producer was found not to have been subsidized and when its imports were excluded from subject volumes before the Commission, the total volume of imports from Turkey fell below the statutory threshold for negligibility. Three years after the AD order issued, the CIT then determined that the same Turkish producer was not in fact dumping either. Erdemir, the Turkish producer that remained subject to the cases, sought through three separate proceedings to give effect to this intervening court decision. This appeal results from Erdemir's participation in and challenge to the Commission's first sunset review, where the Commission, even in the face of clear evidence that imports from Turkey should have been excluded from the AD order from the beginning, found that revocation of the AD order would likely lead to the continuation or recurrence of dumping or material injury. That conclusion was unsupported by law and an abuse of discretion.

## I.  The Original Investigations Result in Findings of No Subsidization By One Turkish Producer, Thereby Triggering an Exclusion of a Subset of Turkish Imports from the Material Injury Analysis by the Commission

In the investigation, the Commission preliminarily found that imports from

Turkey were above the three percent threshold for exclusion from investigation on grounds of negligibility. *See Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545-547 & 731-TA-1291-1297, USITC Pub. 4570, at 14 (Oct. 2015) (Preliminary), Appx0082; 19 U.S.C. § 1677(24).

Commerce, however, ultimately found that one of the two mandatory respondents, Çolakoğlu Metalurji A.S. ("Çolakoğlu"), was not subsidized, and Çolakoğlu was therefore excluded from Commerce's final determination in the CVD investigation, leaving Erdemir as the only Turkish producer found to have been subsidized. *See Countervailing Duty Investigation of Certain Hot-Rolled Steel Flat Products From the Republic of Turkey: Final Affirmative Determination*, 81 Fed. Reg. 53433, 53434-35 (Dep't of Commerce Aug. 12, 2016), Appx0289-90.

In the companion AD investigation, Commerce calculated an above *de minimis* dumping margin for Çolakoğlu as well as for Erdemir. *See Certain Hot-Rolled Steel Flat Products From the Republic of Turkey: Final Affirmative Determination of Sales at Less Than Fair Value*, 81 Fed. Reg. 53428, 53429 (Dep't of Commerce Aug. 12, 2016), Appx0293.

Crucially, because Commerce found that Çolakoğlu did not receive subsidies, the Commission's final injury analysis excluded Çolakoğlu's imports. The U.S. producers argued that Turkish subject imports should be considered injurious

whether Çolakoğlu's imports were excluded or not. Over these objections, the Commission determined that the exclusion of Çolakoğlu's imports was significant and drove the Turkish subsidized import volume below the negligible levels and therefore terminated the investigation. *See Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, 81 Fed. Reg. 66996 (Int'l Trade Comm'n Sept. 29, 2016) ("ITC Notice") Appx0296-97; *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545-547 & 731- TA-1291-1297, USITC Pub. 4638, at 1 n.2, 3, 12-14 (Sept. 2016) (Final) ("ITC Final") ("We consequently determine that subsidized subject imports from Turkey are negligible and terminate the countervailing duty investigation on hot-rolled steel from Turkey."), Appx0308, Appx0310, Appx0319-21.

In the AD injury case, because Çolakoğlu was found to have an above *de minimis* dumping margin, the Commission included Çolakoglu's imports with all Turkish imports as total subject imports from Turkey, found subject AD imports from Turkey were not negligible, and found material injury by reason of subject imports from Turkey and other subject countries. *See* ITC Final, USITC Pub. 4638 at 1, 3, 13 ("{I}mports from Turkey that are subject to the antidumping duty investigation are different from those subject to the countervailing duty investigation. Hot-rolled steel imports from Turkey that are subject to the

antidumping duty investigation were 7.4 percent of total imports during this period and therefore were above negligible levels."), Appx0308, Appx0310, Appx0320. Consequently, Commerce entered a dumping order on hot-rolled steel from Turkey. *See Certain Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Amended Final Affirmative Antidumping Determinations for Australia, the Republic of Korea, and the Republic of Turkey and Antidumping Duty Orders,* 81 Fed. Reg. 67962 (Dep't of Commerce Oct. 3, 2016) ("AD Order"), Appx0623.

## II.   Çolakoğlu Appeals – and Wins – on the Antidumping Determination in the Original Investigation, Which Should Then Reverse the Commission's Material Injury Finding

There were three appeals resulting from the Commerce and Commission decisions in the investigation – one by the U.S. producers and one each by Çolakoğlu and Erdemir.   The U.S. producers challenged the Commission's negligibility determination and lost.   *See Nucor Corp. v. United States*, 296 F. Supp. 3d 1276 (Ct. Int'l Trade 2018).  Çolakoğlu and Erdemir appealed Commerce's final determination of sales at less than fair value, and the resulting issuance of the AD Order.  *See Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. United States*, 308 F. Supp. 3d 1297, 1314-20, 1328 (Ct. Int'l Trade 2018) ("*Erdemir AD I*"); *Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. United States*, 357 F. Supp. 3d 1325, 1329-34, 1336 (Ct. Int'l Trade 2018) ("*Erdemir AD II*"); *Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. United States*, 415 F.

Supp. 3d 1216, 1222-32 (Ct. Int'l Trade 2019) ("*Erdemir AD III*"); *Eregli Demir ve Çelik Fabrikalari T.A.S. v. United States*, 435 F. Supp. 3d 1378, 1380 (Ct. Int'l Trade 2020) ("*Erdemir AD IV*").

The crucial result of these appeals is that Çolakoğlu's imports were found not to have been dumped and therefore were excluded from the AD Order. *See Erdemir AD IV,* 435 F. Supp. 3d at 1380 ("The changes resulted in an estimated weighted-average dumping margin of zero percent for Çolakoğlu and, thus, Çolakoğlu will be excluded from the relevant antidumping duty order."). Commerce accordingly amended the AD Order and excluded Çolakoğlu. *See Certain Hot-Rolled Steel Flat Products from Turkey: Notice of Court Decision Not in Harmony with the Amended Final Determination in the Less-Than-Fair-Value Investigation; Notice of Amended Final Determination, Amended Antidumping Duty Order; Notice of Revocation of Antidumping Duty Order in Part; and Discontinuation of the 2017-18 and 2018-19 Antidumping Duty Administrative Reviews, in Part*, 85 Fed. Reg. 29399 (Dep't of Commerce May 15, 2020) ("Amended AD Determination"), Appx1976.

III. **Erdemir Moves the Commission to Give Effect to the Elimination of Çolakoğlu's Imports from the Universe of Subject Imports and the Commission Rejects All Three Avenues**

The Court of International Trade's decision removed one of two Turkish producers from the purview of "subject imports" and fundamentally changed the universe of imports. Of course, the result of excluding Çolakoğlu's imports was

7

already clear and known, as indeed, on the CVD side of the investigation, the Commission found that imports from Turkey fell below the legal threshold for negligibility and therefore terminated the investigation. Erdemir took immediate steps to ensure adequate and lawful consideration and implementation of the results of the litigation through three separate agency proceedings.

A.    **Following the Conclusion of the Underlying Litigation, Erdemir Requests a Changed Circumstances Review for the Commission to Take into Account the Fundamental Change in the Record**

First, immediately following the decision in *Erdemir AD IV*, Erdemir filed a letter with the Commission seeking reconsideration of the injury determination on the basis that Commerce had now excluded Çolakoğlu's imports and as such, the total volume of Turkish imports would fall below the statutory threshold for negligibility. *See Letter from Erdemir to Commission re Request for Reconsideration* (May 18, 2020), Appx0629. The Commission did not respond.

In September 2021, following this Court's dismissal of an appeal to the antidumping duty order determination (*Eregli Demir ve Celik Fabrikalari T.A.S. v. United States*, Case No. 20-2003, Mandate Order (Fed. Cir. June 4, 2021), docketed in Case No. 16-00218, ECF No. 161 (Ct. Int'l Trade June 4, 2021)), Erdemir requested that the Commission initiate a Changed Circumstances Review of the original determination to address the Amended Antidumping Determination. *See Letter from Erdemir to Commission re Changed Circumstances Review* (Sept. 10,

8

2021), Appx0659. The Commission again denied the request. *See Denial of Request to Institute a Section 751(b) Review; Denial of Request to Institute a Section 751(b) Review or Reconsideration Proceeding Concerning the Commission's Affirmative Determination in Inv. No. 731-TA-1296 (Final), Hot-Rolled Steel Flat Products from Turkey*, 87 Fed. Reg. 73331 (Nov. 29, 2022), Appx0701.

## B. Erdemir Fully Participates in the First Sunset Review and is Also Denied Relief in That Proceeding

Following the Amended AD Determination and *Erdemir AD IV*, the Commission revisited its original injury determination in the five-year review. The Commission was required by statute to determine whether revocation of the order would be likely to lead to continuation or recurrence of material injury within a reasonably foreseeable time. 19 U.S.C. § 1675a(a)(1). Based on the court's determination that Çolakoğlu's imports were not sold at less than fair value, Çolakoglu was excluded from the AD Order, and Erdemir asked the Commission to give effect to this change: because the AD and CVD investigation records were not consistent in excluding Çolakoglu's non-subject imports, that impact should have been accounted for in the review. The Commission declined.

The Commission failed to give full effect to the intervening court decision, and it therefore decided to continue the AD Order on Turkish hot-rolled steel flat products in *Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom*, Inv. Nos. 701-

TA-45-546 and 731-TA-1291-1297 (Review), and 731-TA-808 (Fourth Review), USITC Pub. 5380 (Nov. 2022) ("Sunset Publication"), Appx0704; and *Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom*, 87 Fed. Reg. 74167 (Int'l Trade Comm'n Dec. 2, 2022) ("Sunset Review"), Appx1417.

In the Sunset Publication, the Commission acknowledged that Çolakoğlu was now excluded from the AD Order and its imports must not be treated as non-subject imports, which means those imports are excluded from the analysis of the impact of Turkish imports as a whole. *See* Sunset Publication at 45 n.276, Appx0760. Yet, the Commission included Çolakoğlu's imports with the Turkish data anyway. *See id.* at IV-20, Appx1025 ("Turkey and subject sources subtotals include nonsubject imports from Colakoglu.").

## IV. The Proceedings Below

Erdemir's three administrative actions resulted in three separate appeals to the Court of International Trade. *See Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. ITC*, No. 22-cv-00349 (Ct. Int'l Trade 2024); *Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. ITC*, No. 22-cv-00350 (Ct. Int'l Trade 2024); *Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. ITC*, No. 22-cv-00351 (Ct. Int'l Trade 2024). Two cases were assigned to Judge Reif, and the present action regarding the Sunset Review was assigned to Judge Katzmann. Judge Katzmann upheld the Commission's Sunset Review

determination on the grounds that the Commission's material injury finding from the investigation "remains a current statement of the Commission's" position, and that the previous findings may therefore lawfully *continue* to support the Commission's finding that a "continuation or recurrence" will "likely" ensue. Appx0015.

The court noted "possible tension" between Commerce's Amended AD Determination (excluded Çolakoğlu's imports as *not* dumped) and the Commission's original injury determination (included Çolakoğlu's imports as dumped) but simply concluded that the Commission's original determination stands because it was not reversed. *Id.* The court interpreted Erdemir's claim as seeking a *de facto* amendment to the Commission's original injury determination but this is not so. *See* Appx0018. As set forth below, in the Sunset Review, Erdemir sought to give legal effect to an intervening court decision in an ongoing and active review. The Commission's original injury determination need not be reversed to trigger the Commission's analysis of such crucial intervening facts, and the intervening facts wholly undermine any finding of the likely recurrence of material injury as an entire subset of imports from Turkey were removed from the scope of the AD order completely. This Court should reverse and remand this case consistent with the below.

## SUMMARY OF THE ARGUMENT

After an AD order issued in 2016, subsequent litigation fundamentally affected the premise on which the order was based. Namely, the litigation removed

a quantum of imports from those that were lawfully considered to be injurious. This decision has a seismic legal effect in that, without those now-excluded imports, the total imports from the country fell below the threshold for "negligible" and the statute mandates termination of the investigation. Since that litigation in 2021, Erdemir initiated three separate administrative proceedings before the Commission (and then the CIT) through which it sought to give final and conclusive effect to a clear legal premise that removal of one crucial volume of imports rendered imports from Turkey as a whole to be negligible and therefore required the termination of the case. The Commission's refusal – in any one proceeding – to address the impact of the litigation effectively shut Erdemir out of relief. This appeal (and the appeals in Case Nos. 24-2242 and 24-2243) follow.

Specifically here, Erdemir challenges the Commission's findings in the first sunset review of the 2016 order. The proceeding followed conclusive litigation before the CIT that demonstrated that one of the two Turkish producers of hot-rolled steel flat products was not dumping and removed that producer's imports from what can lawfully be considered "subject" product. Over Erdemir's objections, the Commission erred in (i) refusing to revise the investigation findings to be consistent with subsequent litigation for purposes of assessing the likelihood or recurrence of material injury; (ii) assessing those over-inclusive investigation import volumes while expressly stating it was not; and (iii) providing unsupported conclusions that

relied on data for which it was internally contradictory about using.

Simply put, the Commission's decision in the Sunset Review is not in accordance with law because there was an erroneous material injury decision at stake, and it is unsupported by substantial evidence because the Commission accounted for – and relied on – non-subject merchandise in its material injury decision.

## ARGUMENT

### I.     Standard of Review

In reviewing a Commission decision in a five-year review, the court "shall hold unlawful any determination, finding or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  The court must consider the whole record and "take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NRLB*, 340 U.S. 474, 488 (1951).

In reviewing an agency's construction of a statute, per the U.S. Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), courts are now required to "exercise their independent judgment in deciding whether

an agency has acted within its statutory authority." *Id*. at 2273.

## II.    Applicable Law

In a sunset review, the Commission must "determine whether revocation of an order . . . would be likely to lead to continuation or recurrence of material injury within a reasonably foreseeable time." 19 U.S.C. § 1675a(a)(1). The Commission's evaluation "shall consider the likely volume, price effect, and impact of imports of the subject merchandise on the industry." *Id.* Among relevant considerations are "prior injury determinations, including the volume, price effect, and impact of imports of the subject merchandise on the industry before the order was issued," 19 U.S.C. § 1675a(a)(1)(A), also "whether any improvement in the state of the industry is related to the order," 19 U.S.C. § 1675a(a)(1)(B), and "whether the industry is vulnerable to material injury if the order is revoked." 19 U.S.C. § 1675a(a)(1)(C).

The Commission's volume effects analysis of "whether the likely volume of imports of the subject merchandise would be significant if the order is revoked," must consider "any likely increase in production capacity or existing unused production capacity," along with "existing inventories … or likely increases in inventories," barriers to importation "into countries other than the United States," and "the potential for product-shifting. 19 U.S.C. § 1675a(a)(2). The Commission's price effects analysis must consider the likelihood of "significant price underselling," and whether subject imports "would have a significant depressing or

suppressing effect on the price of" domestically-produced merchandise. 19 U.S.C. § 1675a(a)(3). Finally, the Commission's evaluation of the impact on the domestic industry includes (but is not limited to), whether subject imports would lead to "likely declines in output, sales, market share, profits, productivity, return on investments," capacity utilization; "likely negative effects on cash flow, inventories, employment, wages, growth, ability to raise capital, and investment"; and the "likely negative effects on the existing development and production efforts of the industry." 19 U.S.C. § 1675a(a)(4).

When considering what is a reasonably foreseeable time, "the Commission shall consider that the effects of revocation or termination may not be imminent, but may manifest themselves only over a longer period of time." 19 U.S.C. § 1675a(a)(5). This period may be relatively shorter when commodity products, such as hot-rolled steel, are involved. *See* Statement of Administrative Action accompanying the Uruguay Rounds Agreements Act, H.R. Rep. No. 103- 316, vol. I, at 887 ("SAA"), *reprinted in* 1994 U.S.C.C.A.N. 4040 at 4211; *see also Certain Hot-Rolled Flat-Rolled Carbon-Quality Steel Products From Brazil, Japan, and Russia*, Inv. Nos. 701-TA-384 and 731-TA-806-808, USITC Pub. 3767, at 14 n.67 (April 2005) ("{I}n view of the {commodity} nature of this {hot-rolled steel} industry and market, we have given significantly greater weight to developments likely to occur {within 18-20 months} in 2005 and 2006 than to those pertaining to

later dates.").

**A.    The Commission Was Required By Law to Assess the Sunset Review Data By Excluding the Turkish Imports Found Not Dumped and When Done Turkish Imports Were Negligible**

Here, there could be no continuation or recurrence of material injury because even the original investigation should have concluded with a finding that subject imports from Turkey were negligible.    With Çolakoglu's non-subject volume excluded from period of investigation ("POI") data, the Commission should have decided, as a matter of law, that Turkey's POI import volume was negligible, and thus that Turkey could not be part of any determination of continuation or recurrence of material injury because there could be no previous material injury finding in the investigation.  Yet, the Commission not only refused to account for this in the Sunset Review but it *again* included lawfully excluded imports in the data that it relied upon to support a finding that the AD Order should continue.

Because Çolakoglu's AD margin was recalculated to zero on appeal, and Çolakoğlu was *retroactively* excluded from the dumping order back to the time of the original determination, Çolakoglu's volume became non-subject *ab initio* insofar as any consideration of injury is concerned.  While the lower court focused on the lack of revocation of the Commission's original injury determination, there is no legal authority to support the Commission avoiding the non-subject nature of these imports in the *subsequent* Sunset Review.  Indeed, the effect of Çolakoglu's volume

becoming non-subject merchandise is certain: subject Turkish imports during the POI were negligible, thus non-injurious, and the investigation should have been terminated, just as it was in the CVD investigation. *See* ITC Notice, 81 Fed. Reg. 66996, Appx0296; ITC Final, USITC Pub. 4638 at 1 & n.2, 3, 12-14 ("We consequently determine that subsidized subject imports from Turkey are negligible and terminate the countervailing duty investigation on hot-rolled steel from Turkey."), Appx0308, Appx0310, Appx0319-21. The negligibility decision in the AD investigation, which had an identical factual record, cannot be different.

The lower court agreed (as it must) that if any country is found to have negligible imports, the Commission must terminate the investigation, and may not cumulate negligible subject imports with subject imports from other countries. *See* 19 U.S.C. §§ 1673b(a) (preliminary-phase determination of negligibility), 1673d(b)(1)(B) (final-phase determination of negligibility); SAA, 1994 U.S.C.C.A.N. at 4189 (stating sections 1673b(a) and 1673d(b)(1)(B) "require termination of the investigation if the Commission determines that imports are negligible"). When the provision requiring termination of an investigation for negligibility was added in 1994, the SAA explained the change in the law made termination of the investigation mandatory: under sections 1673b(a) and 1673d(b)(1)(B) "the Commission will not make material injury or threat determinations when it determines that imports are negligible." SAA, 1994

U.S.C.C.A. at 4189. The termination requirement for negligible imports "implements the requirement of the Agreements that negligible or *de minimis* imports not be cumulated." SAA, 1994 U.S.C.C.A.N. at 4183.

It is undeniable that the inclusion of this added Turkish import data pushed the subject Turkish imports in the AD investigation over the line beyond negligible. In the contemporaneous CVD investigation, where imports from Turkey were properly counted, imports were deemed negligible and thus legally too small to support relief. The crux of Erdemir's claim before the Commission in the subsequent sunset review was that the Commission should have recognized that the condition of negligible subject Turkish imports during the investigation was non-injurious. Then, by law, the negligible imports could not be the cause of material injury. It follows that the Commission – as a matter of law – could not find a likelihood of "continuation or recurrence of material injury." The statutory language, "continuation or recurrence of material injury," requires a condition precedent of prior material injury which no longer existed for subject Turkish imports at the time of the sunset decision. Yet, the Commission failed to give effect to this fact. Consequently, the Commission's sunset review determination was not in accordance with law or fact.

**B.     The Sunset Review Was A Proper Vehicle for the Commission to Account for What Should Have Been a Prior No Material Injury Decision**

The Commission should have recognized, in the context of the Sunset Review, that Çolakoglu's success on appeal removed the mandatory condition on which the entire AD Order rested.   The circumstances before the CIT's final decision (that Çolakoğlu was not dumping and should be excluded from the order) were fundamentally different than when the Commission was again presented with Erdemir's arguments that imports from Turkey should not be cumulated with other subject countries.   Then the CIT decision excluded Çolakoglu's imports and Commerce amended the AD Order, altering the material injury analysis.   The Commission, however, refused to consider the effect of Çolakoglu's appeal:

> We note that in asserting that subject imports from Turkey would likely have no discernible adverse impact in the event of revocation, Erdemir has raised several arguments concerning the Commission's negligibility determination in the original antidumping duty investigation with respect to subject imports from Turkey. It contends that the Commission should revisit that determination either in these reviews, in a changed circumstance review, or in a reconsideration proceeding. Erdemir's Prehearing Brief at 10-18; Erdemir's Posthearing Brief at 1-6. These arguments have also been raised in proceedings outside of these reviews and the Commission has addressed them there. Five-year reviews are prospective in nature and therefore do not accommodate reconsideration of an original determination. *See generally* 19 U.S.C. § 1675(c)(1)(C).

Sunset Publication at 48 n.298, Appx0763; Views of the Commission at 68 n.298 (Int'l Trade Comm'n Nov. 25. 2022) ("Commission Views"), Appx1881.  But in all

three proceedings, the Commission refused to take any action to consider (or reconsider) the effect of Çolakoglu's appeal on the Commission's negligibility determination. The Commission's affirmative finding of continuation or recurrence of material injury imports from Turkey is unlawful because subject Turkish imports – which were negligible during the POI – did not previously cause material injury and certainly must be considered negligible as of the time of the Sunset Review.

The Commission lacked the authority to act as though these facts did not exist. Its failure to account for the court-mandated negligibility analysis in the Sunset Review was legal error and warrants a remand.

## C. The Commission's Cumulation Analysis Was Legally Flawed in That it Continued to Include Non-Subject Turkish Imports in the Cumulated Turkish Subject Imports

The statute precludes cumulation of subject imports if the Commission determines that imports from a particular country are likely to have no discernible adverse impact on the domestic industry. 19 U.S.C. § 1675a(a)(7). Separate and apart from the Commission's failure to give legal effect to the exclusion of a whole category of Turkish imports in the Sunset Review, the decision should be remanded for the unlawful cumulation analysis. The Commission improperly included Çolakoglu's non-subject imports in its discussion of POI subject import volumes, volume effects, and price effects in the investigation when these non-subject volumes should have been excluded. The Commission inconsistently separated

subject from non-subject Turkish imports throughout its analysis and this led to an unsupportable conclusion with respect to cumulation – both with respect to the Commission's refusal to decumulate imports from Turkey and when compared to the Commission finding the opposite for imports from Brazil. The inconsistencies on the same record render the decision unsupported by substantial evidence.

In *Allegheny Ludlum Corp. v. United States*, the court considered a sunset review determination in which the Commission similarly reviewed imports that were subject to AD and CVD at one point but where the CVD order was revoked. *See* 475 F. Supp. 2d 1370, 1373-74 (Ct. Int'l Trade 2006). The Commission did not cumulate imports from the subject country and found that those imports underwent meaningful trends, including decline during the investigation period and low market share during the review period. *See id*. at 1376-77. The court upheld the Commission's discretion not to cumulate in the face of these different conditions of competition between those imports and the other subject countries. *See id*. at 1378-79. Here, the Commission refused to evaluate negligible levels of subject Turkish imports during the baseline comparison with the investigation and failed to identify analogous and different conditions of competition that affected imports from Turkey during the review period.

It is clear that the Commission's cumulation analysis not only included but in fact turned on the inclusion of Çolakoglu's non-subject imports. It found: the

"attractiveness of the U.S. market and the Turkish industry's excess capacity," as reason to otherwise reject arguments that Turkish subject imports (excluding Çolakoglu's non-subject imports) "will not have a discernible adverse impact." Sunset Publication, USITC Pub. 5380, at 47-48, Appx0762-63; Commission Views, at 68, Appx1881. But the record does not support this claim. Rather, the record is filled with evidence that confirms that the subject Turkish industry is not export-oriented; not focused or directed to the U.S. market; and a negligible participant in the U.S. market. *See, e.g.,* Letter from the Law Offices of David Simon, *Witness Testimony*, Attachment I at 2 (Sept. 14, 2022), Appx1974.

The Commission improperly included Çolakoglu's non-subject imports in its review of subject imports during the POI. In the very first sentence of the Commission's cumulation analysis for Turkey, it restated the import volumes from the investigation POI, which included Çolakoglu's non-subject imports:

> In the original investigations, subject imports from Turkey increased from [ # ] short tons in 2013 (or [ # ] percent of apparent U.S. consumption) to [ # ] short tons in 2014 (or [ # ] percent of apparent U.S. consumption), and were [ # ] short tons in 2015 (or [ # ] percent of apparent U.S. consumption). They were lower in interim 2016 ([ # ] short tons or [ # ] percent of apparent U.S. consumption) than in interim 2015 ([ # ] short tons or [ # ] percent of apparent U.S. consumption).

Sunset Publication, USITC Pub. 5380, at 45, Appx0760; Commission Views, at 64, Appx1877. This recitation of POI subject import volumes in the Sunset Review – without any assessment or acknowledgement of the material change in facts

22

regarding Çolakoglu's non-subject imports is factually incorrect. Erdemir argued (and the lower court disagreed) that the Commission could not lawfully sum up these same volumes of subject imports when a legally significant volume of imports had been found not to be dumped through *Erdemir AD IV*. But even if the original investigation volumes were accurately summarized by the Commission at the time of the decision in the investigation, the Commission was obligated to reassess the total import volume trends under the current state of the law to account for the finding that Çolakoglu's imports were not dumped, and thus not subject imports. In a footnote two sentences later, the Commission specifically acknowledged that Çolakoglu's AD margin was found to be zero on appeal, and claimed it did not include Çolakoğlu data "in the data for subject imports from Turkey during the current review." Sunset Publication, USITC Pub. 5380, at 45 n.276, Appx0760; Commission Views, at 64 n.276, Appx1877. Contrary to its claim, the Commission included Çolakoglu's non-subject imports in the first sentence of the sunset review cumulation discussion for Turkey. *Compare* Sunset Publication, Appx0704-1416 *with Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545-547 and 731-TA-1291-1297 (Final), at Summary Data Compiled From The Previous Proceedings, at C-3 and C-5 (Aug. 23, 2016) ("Final Staff Report"), Appx1758, Appx1760. This is one of several places in the Sunset Publication where the

Commission included now non-subject imports in the data. For example, the Commission also cited underselling data from the investigation that it acknowledged contained Çolakoglu's non-subject imports.

It cannot be disputed that the exclusion of Çolakoglu's imports as non-subject reverses the outcome of the case. In fact, there are findings in the original investigation that directly implicate the analysis that would later apply in the Sunset Review. For example, the Commission found that – after removing non-injurious imports of Çolakoğlu – there was no likelihood that imports from Turkey would be significant in the imminent future, stating, the "consistently relatively small share of total Turkish hot-rolled steel imports, increasing capacity utilization, and strong home-market orientation, demonstrate that any sustained increase in the percentage of subsidized subject imports from Turkey relative to all imports is unlikely." HRS ITC Final, at 19, Appx0321.

Subject imports from Turkey remained a consistently small share of total Turkish hot-rolled steel imports. Low shipment volumes persisted as subject Turkish producers' HRS production increased significantly from [ # ] short tons in 2016 to [ # ] short tons in 2021, and capacity utilization likewise increased significantly from [ # ] percent in 2016 to [ # ] percent in 2021, while capacity decreased slightly from [ # ] short tons in 2016 to [ # ] short tons in 2021. *See* Sunset Publication at II-9 (Table II-4), Appx0908; IV-153

24

(Table IV-61), Appx1158.  Despite the increases, subject Turkish exports [ *action* ] the U.S. market when prices [ *trend* ] from 2018 to 2019, and only [ *action* ] the U.S. market when prices [ *trend* ] in 2021 amidst a spike in U.S. demand.  *See id.* at IV-206 to 208 (Table IV-74), Appx1211-213; C-3 (Table C-1); Appx1284.  Imports from subject Turkish producers are a tiny percentage of total subject imports during the POR.  *See id.* at C-3, C-5 (Table C-1); Appx1284, Appx1286 (showing subject Turkish imports with [ # ] market share).  In all years, subject Turkish imports barely registered, accounting for [ # ] percent of U.S. consumption, and just [ # ] of all imports.  *See id.* at C-3 (Table C-1), Appx1284. These facts support the conclusion that subject imports from Turkey were likely to have no discernible adverse impact on the domestic industry, thus the Commission should not have cumulated other subject imports with subject imports from Turkey. 19 U.S.C. § 1675a(a)(7).  Accordingly, the Commission should have found that revocation of the order on subject imports from Turkey would not "likely to lead to continuation or recurrence of … material injury," and should have revoked the order on HRS from Turkey.  19 U.S.C. §1675(c)(1).

Finally, the Commission's decision not to cumulate imports from Brazil for purposes of the Sunset Review determination (and then find that revocation of the order on imports from Brazil would not lead to the recurrence of material injury) further undermines the Commission's analysis and conclusions with respect to

imports from Turkey. *See, e.g.*, Sunset Publication at 3, Appx0718. The Commission declined to cumulate subject imports from Brazil because it determined that "subject imports from Brazil would not be likely to compete under similar conditions of competition with subject imports from other subject countries …" Sunset Publication at 59, Appx0774. The lower court dismissed Erdemir's contention that the Commission's inconsistency renders its decision with respect to Turkey unlawful based on its conclusion that "the Commission's cumulation of imports from Turkey is not irreconcilable with its determination not to cumulate imports from Brazil." Appx0026. This is not the correct legal standard of review. Erdemir challenged the Commission's decision regarding cumulation of Turkey on the grounds that it was not supported by substantial evidence, and the Commission's refusal to consider the change in volume for subject imports from Turkey while simultaneously finding that imports from Brazil did not compete with other subject sources contradicts record evidence. The lower court noted that import volume "is only one of the many axes along which conditions of competition can differ," *id*., which is plainly true; however, on these facts where an intervening binding court decision altered the foundation on which the Commission based the injury decision and resulting AD Order, more than a cursory conclusion was required.

## CONCLUSION AND RELIEF SOUGHT

Imports from Çolakoğlu were found to be unsubsidized in the investigation

and fairly priced on remand after appeal. As such, the Commission was bound to exclude this volume of imports for all purposes in the Sunset Review and was presented with a review period in which core facts regarding conditions of competition, import volumes, and analysis of cumulation necessarily changed. These changes compelled the Commission to separately assess imports from Turkey and not cumulate the imports with other subject sources. Yet, by improperly including Çolakoglu's non-subject imports in its analysis, the Commission unlawfully considered non-subject imports in its analysis and reached a decision to continue the AD Order for Turkey that is neither supported by substantial record evidence nor in accordance with law.

For these reasons, Erdemir respectfully requests that this Court remand with instructions for the Commission to reconsider its sunset review determination in light of the failure of the required condition precedent, given subject imports during the investigation were negligible, and to reconsider its cumulation decision after excluding Çolakoglu's non-subject imports for all purposes in POI and period of review data.

Dated: November 20, 2024                    Respectfully submitted,

/s/ Christine M. Streatfeild
Christine M. Streatfeild
Justin R. Becker
Baker & McKenzie LLP
815 Connecticut Avenue, N.W.
Washington, DC 20006-4078
Tel.: (202) 835-6111
christine.streatfeild@bakermckenzie.com

*Counsel to Plaintiff-Appellant,*
*Ereğli Demir ve Çelik Fabrikalari T.A.Ş.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** <u>24-2249</u>

**Short Case Caption:** <u>Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC</u>

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes <u>6,197</u> words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: <u>11/20/2024</u>

Signature: <u>/s/ Christine M. Streatfeild</u>

Name: <u>Christine M. Streatfeild</u>

Save for Filing

# ADDENDUM

# ADDENDUM OF REQUIRED DOCUMENTS

## TABLE OF CONTENTS

| Tab No. | Document | Confidentiality Designation | Appendix Page No. |
|---|---|---|---|
| 1 | *Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States International Trade Commission*, Case No. 22-00351, Judgment (Ct. Int'l Trade June 20, 2024) | Public | Appx0001 |
| 2 | *Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States International Trade Commission*, Case No. 22-00351, Slip Op. 24-75 (Ct. Int'l Trade June 20, 2024) | Public | Appx0002 |
| 3 | *Final Sunset Review Determination in Investigation Nos. 701–TA–545–546 (Review) and 731–TA–808 (Fourth Review), Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom*, 87 Fed. Reg. 74167 (Int'l Trade Comm'n Dec. 2, 2022) | Public | Appx0028 |

# TAB 1:

*Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States International Trade Commission*, Case No. 22-00351, Judgment  (Ct. Int'l Trade June 20, 2024)

## UNITED STATES COURT OF INTERNATIONAL TRADE

| |
|---|
| **EREĞLI DEMIR VE ÇELIK FABRIKALARI T.A.Ş.,**<br><br>       **Plaintiff,**<br><br>   **v.**<br><br>**UNITED STATES INTERNATIONAL TRADE COMMISSION,**<br><br>       **Defendant,**<br><br>   **and**<br><br>**UNITED STATES STEEL CORPORATION, CLEVELAND CLIFFS INC., STEEL DYNAMICS, INC., SSAB ENTERPRISES, LLC, and NUCOR CORPORATION,**<br><br>       **Defendant-Intervenors.** |

**Before: Gary S. Katzmann, Judge**
**Court No. 22-00351**

## <u>JUDGMENT</u>

This case having been submitted for decision, and the court, after due deliberation, having rendered an opinion; now, in conformity with that opinion, it is hereby

**ORDERED** that the U.S. International Trade Commission's determination in its five-year review of the antidumping order on hot-rolled steel flat products from Turkey, <u>see</u> <u>Hot-Rolled Steel From Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom</u>, 87 Fed. Reg. 74167 (ITC Dec. 2, 2022), is sustained; and it is further

**ORDERED** that judgment on the agency record is entered for Defendant the United States International Trade Commission and Defendant-Intervenors.

                                            /s/      *Gary S. Katzmann*
                                                       Judge

Dated: <u>June 20, 2024</u>
     New York, New York

# TAB 2:

*Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States International Trade Commission*, Case No. 22-00351, Slip Op. 24-75 (Ct. Int'l Trade June 20, 2024)

Slip Op. 24-75

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **EREĞLI DEMIR VE ÇELIK FABRIKALARI T.A.Ş.,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES INTERNATIONAL TRADE COMMISSION,**<br><br>    **Defendant,**<br><br>    **and**<br><br>**UNITED STATES STEEL CORPORATION, CLEVELAND CLIFFS INC., STEEL DYNAMICS, INC., SSAB ENTERPRISES, LLC, and NUCOR CORPORATION,**<br><br>    **Defendant-Intervenors.** | **Before: Gary S. Katzmann, Judge**<br>**Court No. 22-00351** |

## <u>OPINION</u>

[ The court denies Plaintiff's Motion for Judgment on the Agency Record. ]

Dated: <u>June 20, 2024</u>

<u>David L. Simon</u>, Law Office of David L. Simon, PLLC, of Washington, D.C., argued for Plaintiff Ereğli Demir ve Çelik Fabrikalari T.A.Ş. With him on the brief was <u>Mark B. Lehnardt</u>.

<u>Spencer J. Toubia</u>, Attorney-Advisor, U.S. International Trade Commission, of Washington, D.C., argued for Defendant the United States International Trade Commission. With him on the brief were <u>Dominic L. Bianchi</u>, General Counsel, and <u>Andrea C. Casson</u>, Assistant General Counsel for Litigation.

<u>Jeffrey D. Gerrish</u>, Schagrin Associates, of Washington, D.C., argued for Defendant-Intervenors United States Steel Corporation, Cleveland-Cliffs Inc., Steel Dynamics, Inc., SSAB Enterprises, LLC, and Nucor Corporation. With him on the brief were <u>Roger B. Schagrin</u> and <u>Nicholas Phillips</u>.

Court No. 22-00351                                                                                                    Page 2

Thomas M. Beline and Sarah E. Shulman, Cassidy Levy Kent (USA) LLP, of Washington, D.C., for Defendant-Intervenor United States Steel Corporation.

Alan H. Price, Christopher B. Weld, and Theodore P. Brackemyre, Wiley Rein LLP, of Washington, D.C., for Defendant-Intervenor Nucor Corporation.

Stephen P. Vaughn, Neal Reynolds, and Barbara Medrado, King & Spalding LLP, of Washington, D.C., for Defendant-Intervenor Cleveland-Cliffs Inc.

Katzmann, Judge:  This case requires the court to peer into a kaleidoscope of administrative determinations related to the issuance of antidumping and countervailing duty orders on imports of hot-rolled steel from Turkey.

In 2016, the U.S. Department of Commerce ("Commerce") determined that hot-rolled steel flat products imported from Turkey were being sold in the United States at less than fair value. See Certain Hot-Rolled Steel Flat Products From the Republic of Turkey: Final Determination of Sales at Less Than Fair Value, 81 Fed. Reg. 53428 (Dep't Com. Aug. 12, 2016) ("Original Antidumping Determination").  The U.S. International Trade Commission ("Commission"), after conducting its own investigation, determined that these less-than-fair-value ("dumped") import sales inflicted material injury on a U.S. industry.  Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom, 81 Fed. Reg. 66996 (ITC Sept. 29, 2016) ("Original Determination").  Commerce then issued an antidumping duty order.  See Certain Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Amended Final Affirmative Antidumping Determinations for Australia, the Republic of Korea, and the Republic of Turkey and Antidumping Duty Orders, 81 Fed. Reg. 67962 (Dep't Com. Oct. 3, 2016) ("Antidumping Duty Order").

Three and a half years later, Commerce determined that one (but not all) of the Turkish importers of hot-rolled steel that the Commission had investigated was not in fact dumping merchandise.  See Certain Hot-Rolled Steel Flat Products From Turkey: Notice of Court Decision Not in Harmony With the Amended Final Determination in the Less-Than-Fair-Value Investigation; Notice of Amended Final Determination, Amended Antidumping Duty Order; Notice of Revocation of Antidumping Duty Order in Part; and Discontinuation of the 2017–18 and 2018–19 Antidumping Duty Administrative Reviews, in Part, 85 Fed. Reg. 29399 (Dep't Com. May 15, 2020) ("Amended Antidumping Determination").  The Commission then revisited its original material-injury determination in a five-year "sunset" review.  See Hot-Rolled Steel From Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom, 87 Fed. Reg. 74167 (ITC Dec. 2, 2022), P.R. 357 ("Five-Year Determination").  The Commission determined that revoking the antidumping order was likely to lead to continuation or recurrence of dumping and material injury.  See id.; see also 19 U.S.C. § 1675(c)(1).

In this case, Plaintiff Eregli Demir ve Celik Fabrikalarti T.A.S. ("Erdemir"),[1] a Turkish producer of hot-rolled steel, argues in a Motion for Judgment on the Agency Record that the Commission's Five-Year Determination unlawfully fails to take proper account of Commerce's Amended Antidumping Determination.  See Compl., Dec. 26, 2022, ECF. No. 4.

---

[1] To ensure internal consistency and to reduce the risk of transcription errors in electronic publication formats, the court in this opinion (apart from this demonstrative footnote) represents Turkish proper names without diacritics.  See Assan Aluminyum Sanayi ve Ticaret v. United States, 48 CIT __, __ n.1, Slip Op. 24-44, at 2 n.1 (Apr. 11, 2024).  Thus, for example, Ereğli Demir ve Çelik Fabrikaları T.A.Ş." becomes "Eregli Demir ve Celik Fabrikalarti T.A.S." and "Çolakoğlu Dis Ticaret A.Ş." becomes "Colakoglu Dis Ticaret A.S."

The court concludes that the challenged elements of the <u>Five-Year Determination</u> are supported by substantial evidence and in accordance with law. The court accordingly enters Judgment on the Agency Record for Defendant (the Commission) and Defendant-Intervenors.

## BACKGROUND

### I.   *Legal and Regulatory Framework*

#### A.   *Antidumping and Countervailing Duties*

The Tariff Act of 1930, as amended, requires Commerce to order the imposition of countervailing duties on imported merchandise upon finding that "the government of a country or any public entity within the territory of a country is providing, directly or indirectly, a countervailable subsidy with respect to the manufacture, production, or export of" that merchandise. 19 U.S.C. § 1671(a)(1); <u>see also</u> <u>id.</u> § 1671e. Commerce is also required to order the imposition of antidumping duties on imported merchandise that "is being, or is likely to be, sold in the United States at less than its fair value." <u>Id.</u> § 1673(1); <u>see also</u> <u>id.</u> § 1673e. The amount of an antidumping duty that Commerce assesses is based on Commerce's calculation of a "dumping margin," which is "the amount by which the normal value exceeds the export price or constructed export price of the subject merchandise." <u>Id.</u> § 1677(35)(A).

Commerce cannot impose either type of duty, however, unless the Commission separately determines (as relevant here) that "an industry in the United States (i) is materially injured, or (ii) is threatened with material injury . . . by reason of imports of that merchandise or by reason of sales (or the likelihood of sales) of [the subject] merchandise for importation." <u>Id.</u> §§ 1671(a)(2), 1673(2).

### B.    The Commission's Five-Year Review

Every five years after the publication of an antidumping or countervailing duty order, the Commission is required to conduct a "sunset" review of that order.  Id. § 1675(c)(1); Nucor Corp. v. United States, 32 CIT 1380, 1385, 594 F. Supp. 2d 1320, 1333 (2008), aff'd, 601 F.3d 1291 (Fed. Cir. 2010).  The Commission's task in conducting this review is to determine whether "revocation of [the] order . . . would be likely to lead to a continuation or recurrence of material injury within a reasonably foreseeable time."  19 U.S.C. § 1675a(a)(1).  In doing so, the Commission is to consider the "likely volume, price effect, and impact of imports of the subject merchandise on the industry if the order is revoked or the suspended investigation is terminated."  Id.  If the Commission determines that revocation would likely lead to continued or recurrent material injury, Commerce cannot revoke the order.  Id. § 1675(d)(2)(B).  But if the Commission concludes that revocation would not have this effect, Commerce must revoke the subject order if Commerce does not separately determine "that dumping or a countervailable subsidy, as the case may be, would be likely to continue or recur . . . ."  Id. § 1675(d)(2)(A).  The Commission's material-injury analysis is thus a critical determinant of whether an antidumping or countervailing duty order will remain in effect after the five-year sunset review.

### C.    Cumulation in the Five-Year Review Context

In conducting its likely-material-injury analysis, the Commission "may cumulatively assess the volume and effect of imports" from multiple source countries if those imports satisfy certain threshold criteria.  19 U.S.C. § 1675a(a)(7).  The imports must be (1) "likely to compete with each other and with domestic like products in the United States market" and (2) not be "likely to have no discernible adverse impact on the domestic industry."  Id.  If these criteria are satisfied,

the Commission "may cumulatively assess the volume and effect of imports of the subject merchandise from all countries" subject to review.  Id.  But as the word "may" indicates, the Commission retains discretion not to make a cumulative assessment (that is, "cumulate") even where the statutory criteria are satisfied.  Id. § 1675a(a)(7); Nucor, 601 F.3d at 1293.  If the Commission declines to cumulate imports from a source country, it proceeds to a likely-material-injury analysis for the decumulated imports on an independent, country-specific basis.  See 19 U.S.C. § 1675a(a)(2).

Section 1675a does not delineate any factors that the Commission must consider in determining whether to cumulate imports from a given country.  See Nucor, 601 F.3d at 1295; Neenah Foundry Co. v. United States, 25 CIT 702, 709, 155 F. Supp. 2d 766, 772 (2001).  The Commission accordingly enjoys "wide latitude" in identifying relevant factors for cumulation in sunset reviews.  Allegheny Ludlum Corp. v. United States, 30 CIT 1995, 2002, 475 F. Supp. 2d 1370, 1380 (2006).  At the same time, however, the Commission's discretion must "be predicated upon a judgment anchored in the language and spirit of the relevant statutes and regulations." Freeport Mins. Co. v. United States, 766 F.2d 1029, 1032 (Fed. Cir. 1985).

### D.    *De Minimis Margins and Negligibility*

When calculating an antidumping duty, Commerce "shall disregard any weighted average dumping margin that is de minimis . . ." 19 U.S.C. § 1673d(a)(4).  "[A] weighted average dumping margin is de minimis if it is less than 2 percent ad valorem or the equivalent specific rate for the subject merchandise."  Id. § 1673b(b)(3).  As Commerce can apply different weighted average dumping margins to different respondents in an investigation, id. § 1677(35)(B), a de minimis finding for one respondent does not necessarily compel the termination of an antidumping order with respect to all respondents.

When calculating a countervailing duty, Commerce is to disregard as <u>de minimis</u> any countervailable subsidy where "the aggregate of the net countervailable subsidies is less than 1 percent ad valorem or the equivalent specific rate for the subject merchandise." <u>Id.</u> § 1671b(b)(4)(A); <u>see also</u> <u>id.</u> § 1671d(a)(3).

As these provisions indicate, Commerce's calculation of a <u>de minimis</u> margin for dumping or a countervailable subsidy reflects a low degree of dumping or subsidization. The Commission's negligibility analysis, by contrast, involves a straightforward comparison of the volume of dumped or subsidized imports from a country against the volume of all imports of the same merchandise from all countries. "[I]mports from a country of merchandise corresponding to a domestic like product identified by the Commission are 'negligible' if such imports account for less than 3 percent of the volume of all such merchandise imported into the United States . . . ." <u>Id.</u> § 1677(24)(A)(i). In an original (non-sunset) material injury investigation, the Commission is directed to terminate the investigation upon determining negligibility. <u>Id.</u> § 1671d(b)(1)(B). The five-year review provision, however, does not expressly provide such a requirement. <u>See</u> <u>id.</u> § 1675a.

## II.    *History of Relevant Administrative Proceedings*

In September 2016, the Commission determined that the U.S. hot-rolled steel industry was materially injured or threatened with material injury by less-than-fair-value (that is, "dumped") imports of hot-rolled steel from Turkey. <u>See</u> Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom, Inv. Nos. 701-TA-545-547 and 731-TA-1291-1297 (Final), USITC Pub. 4638, (Sep. 2016) ("<u>Original Determination</u> Views"); <u>see also</u> <u>Original Determination</u>.

At the same time, the Commission terminated its investigation of material injury by Turkish imports of hot-rolled steel that received countervailable subsidies.  See Original Determination Views at 14.  The Commission explained that Commerce had earlier determined that Turkish hot-rolled steel producer Colakoglu Metalurji A.S. and its affiliates (collectively, "Colakoglu") received a de minimis countervailable subsidy margin.  Id. at 13 (citing Countervailing Duty Investigation of Certain Hot-Rolled Steel Flat Products From the Republic of Turkey: Final Affirmative Determination, 81 Fed. Reg. 53433 (Dep't Com. Aug. 12, 2016)). This meant that for the remaining Turkish producers subject to Commerce's countervailing duty order, including Erdemir, "there is not a potential that subsidized subject imports from Turkey will imminently exceed three percent [that is, the non-negligibility threshold provided by 19 U.S.C. § 1677(24)(A)(i)] of total imports."  Id. at 14.  But because Colakoglu at the time remained subject to Commerce's Antidumping Order, the Commission did not make a similar negligibility finding with respect to dumped imports of hot-rolled steel from Turkey.  See id. at 13 & n.52.

Pursuant to the Original Determination, as well as the results of its own investigation, see Original Antidumping Determination, Commerce issued an antidumping duty order on Turkish imports of hot-rolled steel in October 2016.  See Antidumping Duty Order.  Commerce calculated dumping margins above the de minimis level for both Erdemir and Colakoglu.  Original Antidumping Determination at 53429.

Later in October 2016, Erdemir and Colakoglu challenged the Original Antidumping Determination in consolidated actions before this court.  See Eregli Demir ve Celik Fabrikalari T.A.S. v. United States, 44 CIT __, __, 435 F. Supp. 3d 1378, 1379 (2020).  And after three

remands in that case, <u>see</u> <u>id.</u>, Commerce amended the <u>Antidumping Duty Order</u>.  See <u>Amended</u> <u>Antidumping Determination</u>.

In the <u>Amended Antidumping Determination</u>, Commerce calculated Colakoglu's dumping margin as zero and excluded Colakoglu's imports from the antidumping duty order.  <u>See</u> <u>Amended</u> <u>Antidumping Determination</u> at 29400.  But Commerce clarified that "[t]his exclusion does not apply to merchandise that is not both produced and exported by Colakoglu." <u>Id</u>. Commerce calculated an above <u>de minimis</u> dumping margin of 2.73% for Erdemir and accordingly left the antidumping order in place with respect to Erdemir's imports of dumped merchandise.  <u>See</u> <u>id.</u>; <u>see also</u> 19 U.S.C. § 1673b(b)(3).

On May 18, 2020, Erdemir requested that the Commission reconsider its <u>Original</u> <u>Determination</u> on account of Commerce's exclusion of Colakoglu from the antidumping order in the <u>Amended Antidumping Determination</u>.  <u>See</u> Letter from Erdemir to ITC, re: Request for Reconsideration (May 18, 2020), P.R. 1 ("Reconsideration Request").

One year later, following, the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") dismissed an appeal from this court's decision sustaining Commerce's <u>Amended</u> <u>Antidumping Determination</u>.  <u>See</u> <u>Eregli Demir ve Celik Fabrikalari T.A.S. v. United States</u>, No. 20-2003 (Fed. Cir. dismissed June 4, 2021), P.R. 18; <u>see also</u> <u>Eregli Demir</u>, 435 F. Supp. 3d 1378. Erdemir then requested that the Commission initiate a Changed Circumstances Review of its <u>Original Determination</u> on account of the finality of the <u>Amended Antidumping Determination</u>. <u>See</u> Letter from Erdemir to ITC, re: Changed Circumstances Review Request (Sept. 10, 2021), P.R. 18 ("CCR Request").  The Commission denied both the Reconsideration Request and the CCR Request on November 29, 2022.  <u>See</u> <u>Denial of Request To Institute a Section 751(b) Review;</u>

Denial of Request To Institute a Section 751(b) Review or Reconsideration Proceeding Concerning the Commission's Affirmative Determination in Investigation No. 731-TA-1296 (Final), Hot-Rolled Steel Flat Products From Turkey, 87 Fed. Reg. 73331 (ITC Nov. 29, 2022), P.R. 356.

Meanwhile, the Commission conducted a five-year sunset review of the Original Determination. Erdemir submitted a pre-hearing administrative brief on September 8, 2022. See Pre-Hearing Br., Sept. 8, 2022, P.R. 261, C.R. 267. The Commission held a public hearing on September 15, 2022, see Hr'g Tr., Sept. 16, 2022, P.R. 307, and Erdemir submitted a post-hearing administrative brief shortly afterward. See Post-Hr'g Br., Sept. 27, 2022, P.R. 323, C.R. 292 ("Erdemir's Post-Hr'g Br.").

The Commission published the results of its sunset review in the Federal Register on December 2, 2022. See Five-Year Determination. The Commission determined that revoking the antidumping duty order on Turkish imports of hot-rolled steel "would be likely to lead to continuation or recurrence of material injury to an industry in the United States within a reasonably foreseeable time." Id. at 74167.

The Commission explained its reasoning at greater length in a separate Commission-issued publication. See Hot-Rolled Steel from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom, USITC Pub. No. 5380, Inv. Nos. 701-TA-545-546 and 731-TA-1291-1297 (Review), and 731-TA-808 (Fourth Review) (Nov. 2022), P.R. 355 ("Public

Views"), C.R. 336 ("Confidential Views").[2]  The Commission explained that in reaching[3] its

determination, it cumulatively assessed ("cumulated") less-than-fair-value imports of subject

merchandise from Turkey with those from Australia, Japan, the Netherlands, South Korea, Russia,

and the United Kingdom (but not Brazil, the remaining subject country).  See Public Views at 67;

Confidential Views at 96–97.

### III.    Procedural History

Erdemir filed a complaint against the Commission before the U.S. Court of International

Trade ("CIT") on December 26, 2022.  See Compl.  Five U.S. producers of hot-rolled steel (United

States Steel Corporation, Cleveland-Cliffs Inc., Steel Dynamics, Inc., SSAB Enterprises, LLC, and

Nucor Corporation) then moved to intervene as Defendant-Intervenors.  See Mot. to Intervene,

Jan. 12, 2023, ECF No. 19; Mot. to Intervene., Jan. 24, 2023, ECF No. 21; Mot to Intervene, Jan.

24, 2023, ECF No. 26; Mot. to Intervene, Jan. 25, 2023, ECF No. 31.  The court granted each

motion.  See Order, Jan. 12, 2023, ECF No. 20; Order, Jan. 24, 2023, ECF No. 25; Order, Jan. 25,

2023, ECF No. 30; Order, Jan. 26, 2023, ECF No. 35.

---

[2] The Commission published both public and confidential versions of this document.  As these
versions are paginated differently, citations in this opinion refer to both versions.

[3] "The Commission makes its determinations by tallying the votes of the six individual
commissioners, each of whom is obligated to determine whether particular imports cause or
threaten to cause the requisite harm."  U.S. Steel Grp. v. United States, 96 F.3d 1352, 1360 (Fed.
Cir. 1996).  Only five commissioners took part in issuing the Five-Year Determination: David S.
Johanson, Rhonda K. Schmidtlein, Jason E. Kearns, Randolph J. Stayin, and Amy A. Karpel.
While Commissioners Schmidtlein and Stayin dissented as to the majority's decision not to
cumulatively assess Brazilian imports of hot-rolled steel, the commissioners were unanimous as
to the aspects of the Five-Year Determination that are subject to challenge in this case.  See Public
Views at 108; Confidential Views at 156.

On July 14, 2023, Erdemir filed the instant Motion for Judgment on the Agency Record under USCIT Rule 56.2. See Pl.'s Mot. for J. on the Agency R., July 14, 2023, ECF No. 45 ("Pl.'s Br."). After filing a motion for an extension of time, see Def.'s Mot. for Extension of Time, Sept. 20, 2023, ECF No. 48, which was granted, see Order, Sept. 20, 2023, ECF No. 49, the Government filed a response. See Def.'s Mem. in Opp'n. to Pl.' Mot. for J. on the Agency R., Nov. 16, 2023, ECF No. 52. Defendant-Intervenors also filed a response, see Resp. of Def.-Inters. in Opp'n to Pl.'s Mot. for J. on the Agency R., Nov. 16, 2023, ECF No. 54, and Erdemir filed a reply. See Pl.'s Reply, Dec. 21, 2023, ECF No. 57 ("Pl.'s Reply"). After the court scheduled oral argument for April 10, 2024, see Order, Mar. 1, 2024, ECF No. 62, Erdemir moved to bifurcate that argument into public and closed sessions. See Pl.'s Mot. to Bifurcate Oral Arg., March 9, 2024, ECF No 63. The court denied that motion, see Order, Apr. 2, 2024, ECF No. 64, and issued a list of questions to the parties on to the parties later that day. See Letter re: Qs. for Oral Arg., Apr. 2, 2024, ECF No. 65. The parties timely filed written responses to those questions. See Pl.'s Resp. to Ct.'s Qs. for Oral Arg., Apr. 8, 2024, ECF No. 66; Def.'s Resp. to Ct.'s Qs. for Oral Arg., Apr. 8, 2024, ECF No. 67; Def.-Inters.' Resp. to Ct.'s Qs. for Oral Arg., Apr. 8, 2024, ECF No. 68.

At oral argument, which was held as a single public session, the court invited the parties to file additional written submissions. The parties did so. See Pl.'s Post-Oral Arg. Subm., April 22, 2024 ("Pl.'s Supp. Br."), ECF No. 73; Def.-Inters.' Post-Oral Arg. Subm., Apr. 22, 2024, ECF No. 74; Def.'s Post-Oral Arg. Subm., Apr. 22, 2024, ECF No. 75.

## JURISDICTION AND STANDARD OF REVIEW

Jurisdiction lies under 28 U.S.C. § 1581(c). The standard of review in this action is set forth in 19 U.S.C. § 1516a(b)(1)(B)(i), which states that "[t]he court shall hold unlawful any

determination, finding or conclusion found . . . to be unsupported by substantial evidence on the

record, or otherwise not in accordance with law . . . ."

"[A] party challenging the Commission's determination under the substantial evidence

standard has chosen a course with a high barrier to reversal." Nippon Steel Corp. v. United States,

458 F.3d 1345, 1358 (Fed. Cir. 2006) (internal quotation marks and citation omitted).  Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." Broadcom Corp. v. Int'l Trade Comm'n, 28 F.4th 240, 249 (Fed. Cir. 2022) (internal

quotation marks and citation omitted).  To be supported by substantial evidence, a determination

must account for "whatever in the record fairly detracts from its weight," including "contradictory

evidence or evidence from which conflicting inferences could be drawn." Suramerica de

Aleaciones Laminadas, C.A. v. United States, 44 F.3d 978, 985 (Fed. Cir. 1994) (quoting Universal

Camera Corp. v. N.L.R.B., 340 U.S. 474, 487–88 (1951)).

## DISCUSSION

Erdemir presents two main arguments: that (1) the Five-Year Determination is not in

accordance with law because it does not rest on a predicate material injury as required by 19 U.S.C.

§ 1675a(a)(1)(A), and that (2) it is unsupported by substantial evidence because the Commission

improperly considered imports of non-subject merchandise.  Neither argument is availing.

### I.    The Five-Year Determination is in Accordance With Law

Erdemir first argues that the Commission could not have lawfully determined (as it did)

that revoking the Antidumping Order "would be likely to lead to continuation or recurrence of

material injury." Pl.'s Br. at 18 (quoting 19 U.S.C. § 1675a(a)(1)).  This, Erdemir asserts, is

because the Amended Antidumping Determination's negligibility finding with respect to

Colakoglu rendered the Commission's <u>Original Determination</u> inoperative as a means of establishing a material injury by any Turkish producer of subject merchandise—and that without an underlying material injury, there can be no "continuation or recurrence" of that injury as a matter of law.  <u>See</u> 19 U.S.C. § 1675a(a)(1)(A).  In a nutshell: "The Commission cannot find that material injury is likely to continue or recur because of subject Turkish imports—which were negligible during the [Period of Investigation]—did not previously cause material injury."  Pl.'s Br. at 23.

This argument falters because the Commission's <u>Original Determination</u> remains a final and binding agency action.  Erdemir did not challenge it by the appeal deadline, and separate litigation related to Erdemir's petitions for reconsideration and a changed circumstances review of the <u>Original Determination</u> is currently pending before another judge of this court.  <u>See Eregli Demir ve Celik Fabrikalari T.A.S. v. United States Int'l Trade Comm'n</u>, Court No. 22-349 (CIT filed Dec. 26, 2022); <u>see also Eregli Demir ve Celik Fabrikalari T.A.S. v. United States Int'l Trade Comm'n</u>, Court No. 22-350 (CIT filed Dec. 26, 2022).  (Oral argument in those cases took place on June 13, 2024).  Accordingly, despite possible tension with Commerce's <u>Amended Antidumping Determination</u>,[4] the <u>Original Determination</u> remains a current statement of the Commission's determination that "an industry in the United States is materially injured by reason of subject imports" of dumped hot-rolled steel from Turkey.  <u>Original Determination</u> at 52.  The <u>Original Determination</u> establishes a predicate material injury—a "condition precedent," as Erdemir styles it, Pl.'s Br. at 21—from which the Commission may lawfully find that a

---

[4] The court need not, and does not, reach the issue of whether the <u>Amended Antidumping Determination</u> is ultimately reconcilable with the <u>Original Determination</u>.

"continuation or recurrence" will "likely" ensue.[5]

The court declines Erdemir's suggestion that it treat elements of the <u>Original Determination</u> as having been "nullifie[d]" by Commerce's subsequent <u>Amended Antidumping Determination</u>. Pl.'s Br. at 23. Doing so would deprive all interested parties, including Erdemir, of the ability to ascertain the present legal effect of the Commission's <u>Original Determination</u> by reference to its published text. This, in turn, would upset the basic principles of finality and certainty that underlie administrative law. <u>See</u> <u>Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.</u>, 435 U.S. 519, 554–55, (1978) (quoting <u>Interstate Com. Comm'n v. Jersey City</u>, 322 U.S. 503, 514–15 (1944)); <u>see also</u> <u>ThyssenKrupp Acciai Speciali Terni S.p.A. v. United States</u>, 603 F.3d 928, 934 (Fed. Cir. 2010) ("Parties to a proceeding have an interest in relying on final decisions of adjudicatory bodies.").

Preserving the legal effect of final and unrevoked administrative determinations is particularly important in the trade context, where special complexities heighten the need for beacons of certainty. The administration of U.S. trade remedy laws involves the coordinated behavior of several agencies. This behavior is iterated, and not synchronously: Commerce may

---

[5] All parties rest aspects of their arguments on the <u>Statement of Administrative Action accompanying the Uruguay Rounds Agreements Act</u>, H.R. Doc. No. 103-316, vol. I, <u>reprinted in</u> 1994 U.S.C.C.A.N. 4040 ("<u>SAA</u>"). Erdemir asserts that the SAA "carries authoritative weight." Pl.'s Reply at 10 n.3 (quoting <u>AK Steel Corp. v. United States</u>, 226 F.3d 1361, 1368 (Fed. Cir. 2000)). The statutory provision to which this quoted language refers, however, does not elevate the SAA to the status of a statute. <u>See</u> 19 U.S.C. § 3512(d). It limits the authority of the SAA to "judicial proceeding[s] in which a question arises concerning . . . interpretation or application" of the Uruguay Round Agreements Act. <u>Id.</u> And no argument in this case, as briefed by the parties, turns on such a question of interpretation or application. <u>Cf.</u> <u>AK Steel</u>, 226 F.3d at 1367 (invoking the SAA to analyze, through close statutory interpretation, the effect of Congress's revision of a statute). Accordingly, the court does not consider the SAA in reaching its decision in this case. Nor would such consideration be necessary to the court's disposition.

conduct annual administrative reviews of its determinations, and the Commission conducts five-year sunset reviews like the one Erdemir challenges in this case. Judicial review complicates matters even further, as do court-ordered remand redeterminations—which take time to prepare and may themselves be remanded. See, e.g., Green Farms Seafood Joint Stock Co. v. United States, 48 CIT __, __, Slip Op. 24-46, at 1 (Apr. 17, 2024) (remanding, in a case involving two consolidated challenges, Commerce's determination in the seventeenth administrative review of an antidumping order that was originally issued in 2003). The result is that tracing the determinations underlying a given antidumping or countervailing duty order—each of which represents a "consummation of the administrative process," Chicago & S. Air Lines v. Waterman S. S. Corp., 333 U.S. 103, 113 (1948), can be a perplexing endeavor. A party seeking to understand its obligations and preserve its rights must keep track of a host of administrative and judicial developments. See, e.g., Goodluck India Ltd. v. United States, 47 CIT __, __, 670 F. Supp. 3d 1353, 1379–80 (2023).

It is thanks to administrative finality that this task is merely difficult and not impossible. When Commerce or the Commission issues or revokes a determination, it must describe the nature and grounds of its decision. See 19 U.S.C. §§ 1677f, 1673d(d). This means that even though a particular duty order may rest a complex network of agency actions, the network remains susceptible to analysis as a set of discrete, indexed, and outwardly legible components—each of which, unless further modified or superseded, can be safely relied on as an order from which "rights or obligations have been determined or legal consequences will flow." Port of Bos. Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 71 (1970).

The approach Erdemir urges the court to adopt would leave navigators of the trade law labyrinth without this crucial navigational thread. An interested party could not simply look to a Commission material injury determination as a controlling statement of the legal effects that flowed at the time of issuance. Instead, those effects would be subject to retroactive, undefined revisions and nullifications by subsequent non-Commission determinations—which, like the Amended Antidumping Determination, do not purport to automatically execute a change in the Commission's material injury determination.

Treating the Amended Antidumping Determination as a de facto amendment to the Original Determination would also frustrate the administrative scheme that Commerce and the Commission are jointly charged with administering. As the court recognized early on, "[t]he very strict controls on administrative review of prior determinations . . . are [a] good indication that Congress did not want these determinations to remain in a state of flux". Royal Bus. Machines, Inc. v. United States, 1 CIT 80, 87 n.18, 507 F. Supp. 1007, 1014 n.18 (1980), aff'd, 669 F.2d 692 (C.C.P.A. 1982). Pursuing "what the court perceives to be the best or correct result would render judicial review totally unpredictable." PSC VSMPO-Avisma Corp. v. United States, 688 F.3d 751, 761 (Fed. Cir. 2012) (quoting Vt. Yankee, 435 U.S. at 546) (internal quotation marks omitted).

If Commerce determinations could impliedly divest Commission determinations of their legal effect, parties (and the court) would be left to guess as to whether a divestment has occurred—and, if it has occurred, what its boundaries are. Sophisticated actors can make sophisticated guesses, but at the level of complexity typical of trade remedy–related determinations there is simply no way to deduce the totality of downstream legal consequences. Ascertaining those

consequences is the province of litigation, not divination: if a party wants to cut off the legal effect

of a past determination that it alleges is irreconcilable with subsequent determinations, it can sue

for that remedy.  Otherwise, the past determination remains in force.

Consider the nuances of the legal effect that Erdemir attributes to the Amended

Antidumping Determination.  It is not a "straightforward mathematical adjustment."  NTN Bearing

Corp. v. United States, 74 F.3d 1204, 1208 (Fed. Cir. 1995).  Erdemir argues that if Commerce

calculates a de minimis dumping margin for Colakoglu, the Commission should consider all

remaining entries dumped by other Turkish importers to be negligible.  Pl.'s Br. at 19.  Erdemir

further insists that if the Commission makes a negligibility determination for all Turkish importers

on the basis of Commerce's finding that Colakoglu's countervailable subsidies are de minimis, the

Commission must also make a parallel negligibility determination for all Turkish importers upon

Commerce's amended finding that Colakoglu's dumping margin is de minimis.  Id.  Along the

way, Erdemir implies that a de minimis dumping margin (as defined by 19 U.S.C. § 1673b(b)(3))

necessarily compels the Commission's finding of negligibility as provided in 19 U.S.C.

§ 1673d(b)(1)(B).

This is a non-obvious line of reasoning: erroneous or not, it is at the very least unclear

without the aid of substantial explanation.  And Erdemir effectively[6] asks the court to retroactively

---

[6] Erdemir argues that "[t]he Commission, in declining to initiate the [changed circumstance review] on grounds of duplicativeness, essentially wrote into the sunset review the mandate to consider the impact of the changed circumstances, i.e., the Colakoglu exclusion, and then proceeded to ignore its own mandate."  Pl.'s Supp. Br. at 3.  Whether this is a valid imputation or not, such "writing-in" is beyond the Commission's power.  The Commission cannot replace by declaration the parameters of a review that Congress has imposed through legislation.  See Civ. Aeronautics Bd. v. Delta Air Lines, Inc., 367 U.S. 316, 334 (1961) ("[W]e think that both administrative and judicial feelings have been opposed to the proposition that the agencies may expand their powers of reconsideration without a solid foundation in the language of the statute.").

incorporate its conclusions into the <u>Original Determination</u> without any kind of administrative proceeding or notice.  This of course is an action that the Commission itself is not even authorized by statute to perform, and the court declines to treat it as completed.  If Erdemir wishes to sap the <u>Original Determination</u> of the force that establishes a "condition precedent" material injury, it must challenge (or have challenged) the <u>Original Determination</u> itself.  That course of action would give the Commission a chance to consider Erdemir's negligibility arguments in the first instance.

The court observes that Erdemir has separately petitioned the Commission for reconsideration of the <u>Original Determination</u> and for the initiation of a changed circumstance review.  Although the Commission denied both petitions, Erdemir has challenged both denials in separate actions before the CIT.  <u>See</u> <u>Eregli Demir</u>, Court No. 22-349; <u>Eregli Demir</u>, Court No. 22-350.  The court in this case expresses no view as to the potential disposition of those actions, which (as noted above) are before a different judge.  The court merely observes that if Erdemir hopes to arrest the continuing legal effects of an <u>Original Determination</u> that it asserts is out of date, there exist more suitable channels for that endeavor than the one it has chosen here.

This is accordingly not a circumstance where "equity will, for the purposes of justice, treat that to have been done, which ought to have been done."  <u>Taylor v. Longworth</u>, 39 U.S. 172, 177 (1840) (Story, J.).

## II.    *The Five-Year Determination is Supported by Substantial Evidence*

Erdemir also challenges the Commission's exercise of discretion to cumulatively assess

---

It may be (although the court does not entertain the question here) that the Commission erroneously declined to initiate a changed circumstance review.  <u>See</u> <u>Eregli Demir</u>, Court No. 22-350. Erroneous or not, however, that decision does not broaden the statutory scope of the Commission's sunset review.

(that is, "cumulate") imports of subject merchandise alongside imports from other countries. Erdemir argues that the cumulation determination is unsupported by substantial evidence and should accordingly be held unlawful pursuant to 19 U.S.C. § 1516a(b)(l)(B)(i).  This, Erdemir alleges, is because the Commission improperly considered Colakoglu's non-subject imports in finding that Turkish imports of subject merchandise would not be "likely to have no discernible adverse impact on the domestic industry."  See Pl.'s Br. at 24; 19 U.S.C. § 1675a(a)(7).  According to Erdemir, "[a]ny analysis including Colakoglu's non-subject imports is in error and cannot provide record support for the Commission's findings or conclusions."  Pl.'s Br. at 26.

This argument is without merit because (1) the Commission did not consider Colakoglu's non-subject imports as support for its discernible-adverse-impact finding and (2) the Commission reasonably concluded that likely imports of subject merchandise from Turkey—even without Colakoglu's sales—would clear the low threshold for discernibility.

### A.  The Commission did not Consider Colakoglu's Data in its Cumulation Analysis

Although Erdemir's brief refers generally to a "cumulation analysis,"[7] the Commission's determination to cumulate actually rests on two separate statutorily mandated inquiries.  19 U.S.C. § 1675a(a)(7).  Before exercising its discretion to cumulatively assess imports, the Commission must assess (1) whether the imports to be cumulated are "likely to compete with each other and

---

[7] As noted above, the Commission's task in a Five-Year review of a duty order is to determine whether "revocation of [the] order . . . would be likely to lead to a continuation or recurrence of material injury within a reasonably foreseeable time." 19 U.S.C. § 1675a(a)(1).

with domestic like products in the United States market,"[8] and (2) whether the imports are "likely to have no discernible adverse impact on the domestic industry." Id. The statute's text confirms that these are independent prerequisites.[9]

In the proceeding before the Commission, Erdemir asserted that the second "no discernible impact" prerequisite was not satisfied. See Erdemir's Posthearing Br. at 14. The Commission summarized this challenge and responded to it as follows:

> Regarding Erdemir's argument that, since imports of hot-rolled steel from Colakoglu are not subject merchandise in these reviews, subject imports from Turkey will not have a discernible adverse impact, we disagree. Given the relative attractiveness of the U.S. market and the Turkish industry's excess capacity, we find that it is not likely that there will be no discernible adverse impact if the antidumping duty order on hot-rolled steel from Turkey is revoked even if exports from Colakoglu are no longer subject merchandise.

Public Views at 48 n.298; Confidential Views at 68 n.298. The Commission supported its reference to the attractiveness of the U.S. market with a discussion of four points: the average unit value of shipments from Turkey to the United States, the acknowledgment of a respondent in its Foreign Producer Questionnaire Response that the U.S.'s market offers higher prices than other

---

[8] The Commission's practice in carrying out this statutory mandate is to undertake what it terms a "conditions-of-competition" analysis. See Nucor Corp. v. United States, 601 F.3d 1291, 1296 (Fed. Cir. 2010).

[9] 19 U.S.C. § 1675a(a)(7) provides as follows:

> [T]he Commission may cumulatively assess the volume and effect of imports of the subject merchandise from all countries with respect to which reviews . . . were initiated on the same day, if such imports would be likely to compete with each other and with domestic like products in the United States market. The Commission shall not cumulatively assess the volume and effects of imports of the subject merchandise in a case in which it determines that such imports are likely to have no discernible adverse impact on the domestic industry.

Id.

Court No. 22-00351                                                                              Page 22

countries' markets, the trend in Erdemir's export volume during the investigation underlying the

Original Determination, and the fact that Turkish imports of hot-rolled steel are subject to an

antidumping order in the European Union.  See Public Views at 47–48; Confidential Views at 68.

The Commission supported its reference to the Turkish industry's excess capacity with a

discussion of Turkish producers' reported excess capacity in 2021 and an individual non-

Colakoglu respondent's plan to expand capacity for 2023.  See Public Views at 46–47;

Confidential Views at 67–68.

　　　None of these factors involved Colakoglu's U.S. sales of non-subject merchandise.  While

the Commission did reference data collected during the original investigation—that is, before

Colakoglu's imports lost their status as subject imports following the Amended Antidumping

Determination—the Commission generally employed those references either as background[10] or

as a means of establishing an illustrative comparison with data collected during the review

underlying the Five-Year Determination.  See id. at 67.  In the one instance where the Commission

did apparently directly rely on Original Determination data, that data pertained to a trend in the

commercial activity of Erdemir alone.  See id. at 68.  At no point did the Commission directly rely

on a data set that includes Colakoglu's pre-exclusion imports as a basis for its negative "no

discernible adverse impact" finding.  See id. at 64–68.  As the Commission stated, "Colakoglu is

no longer a producer of subject merchandise and data for it is not included in the data for subject

---

[10] Erdemir asserts that "[i]n the very first sentence of the Commission's cumulation analysis for
Turkey [the Commission] included Colakoglu's non-subject imports in a review of subject import
volume from Turkey."  Pl.'s Br. at 25.  But the fact that the Commission referenced this
information early on—by way of background, as context later clarifies—does not mean that the
Commission relied on Colakoglu's data from the Original Determination in reaching its
discernible-adverse-impact finding for the Five-Year Determination.

imports from Turkey during the current review." Id. at 64 n.276.

> **B.**    ***The Commission Reasonably Concluded that Turkish Hot-Rolled Steel Imports Would Not Have No Discernible Adverse Impact on Domestic Industry***

Erdemir argues that without the "taint" of Colakoglu's data, the Commission could not have lawfully determined that Turkish hot-rolled steel imports would not have no discernible adverse impact on U.S. industry. See Pl.'s Reply at 20. This, Erdemir suggests, is because the collective value of non-Colakoglu imports during the review period underlying the Five-Year Determination was too low to effect a discernible impact. See id.; see also Pl.'s Br. at 29–30. Erdemir raised the same argument during the Commission proceeding below: without factoring in Colakoglu's imports, Erdemir argued, "[Hot-rolled steel] imports from Turkey have remained limited . . . with no expectation of increased imports from subject Turkish producers." Erdemir's Post-Hr'g Br. at 14–15.

Discernibility, however, is a low bar. "[S]atisfying the 'no discernible adverse impact' element of the cumulation determination merely requires a finding that a set of imports clears a baseline discernability threshold for adverse impact." Cleveland-Cliffs Inc. v. United States, 48 CIT __, __, Slip Op. 24-34, at 21–22 (Mar. 20, 2024) (citing Nippon Steel Corp. v. U.S. Int'l Trade Comm'n, 494 F.3d 1371, 1379 n.6 (Fed. Cir. 2007)). An impact need not even inflict material injury—that is, "harm which is not inconsequential, immaterial, or unimportant," 19 U.S.C. § 1677—to be discernible. See Usinor v. United States, 28 CIT 1107, 1123, 342 F. Supp. 2d 1267, 1281–82 (2004). Accordingly, as the court "may not reweigh the evidence or substitute its own judgment for that of the agency," id. at 1111, the court concludes that the Commission cited "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" when it

rejected Erdemir's preferred weighting.  <u>Broadcom</u>, 28 F.4th at 249 (internal quotation marks and citation omitted).

> ### C.     *The Commission's Determination to Cumulate Turkish Imports Is Reconcilable With its Determination not to Cumulate Brazilian Imports*

In the <u>Five-Year Determination</u>, the Commission declined to cumulate imports of hot-rolled steel from Brazil.  Erdemir argues that this presents an inconsistency: "[t]he Commission's failure to exclude Colakoglu's non-subject imports from its baseline analysis of investigation data tainted the cumulation analysis such that it cannot be reconciled with the Commission's decision not to cumulate subject imports from Brazil."  Pl.'s Br. at 31.

Even assuming the validity of Erdemir's predicate assertion that the Commission's analysis was "tainted" (an assertion which, as explained above, the court finds unpersuasive), Erdemir's argument is misplaced.  Here, Erdemir challenges only the Commission's finding that subject imports from Turkey would not inflict no discernible impact on U.S. industry.  But when the Commission conducted the same discernible-impact inquiry regarding imports from Brazil, the Commission also found discernibility.  <u>See</u> Public Views at 32, Confidential Views at 44.  These findings are not just reconcilable—they are the same.  The Commission declined to cumulate Brazilian imports for the entirely distinct reason that "subject imports from Brazil would not be likely to compete under similar conditions of competition with subject imports from other subject countries . . . ."  Public Views at 59, Confidential Views at 86.

Erdemir claims that "[t]he Commission's division of the cumulation analysis between 'no discernible adverse impact' and 'conditions of competition' is effectively meaningless given the similarity of analysis between the two."  Pl.'s Br. at 34.  That is not so.  For one thing, the Commission does not divide its cumulation analysis on its own initiative.  Section 1675a(a)(7)

requires separate and independent inquiries.  It is possible, for example, that imports that do not "compete with each other and with domestic like products in the United States market" could nevertheless inflict a "discernible adverse impact on the domestic industry."  Id.; see, e.g., Allegheny Ludlum, 30 CIT at 2000.

The two inquiries also involve different metrics.  In a conditions-of-competition inquiry, the Commission assesses the degree of similarity among markets that export subject merchandise. See id. at 19–20; see also U.S. Steel Corp. v. United States, 36 CIT 1172, 1177–78 (2012), 856 F. Supp. 2d 1318, 1324, aff'd, 550 F. App'x 893 (Fed. Cir. 2014) (noting that the Commission "thoroughly examined and identified potential differences in conditions of competition relating to export orientation, historic volume trends, export market focus, and historic pricing patterns").  In the discernibility analysis, the Commission looks not to difference but whether the imports in question clear a low threshold of discernibility.  See Nippon Steel, 494 F.3d at 1379 n.6; Allegheny Ludlum, 30 CIT at 2000 ("In its determination of whether imports are likely to have no discernible adverse impact on the domestic industry, the Commission generally considers the likely volume of subject imports . . . .").  Even though the Commission's analyses of these metrics may rest on overlapping data, see Pl.'s Br. at 31, it does not follow that data which cuts against a finding of similar conditions of competition must also cut against a finding of discernibility.  Import volume is only one of the many axes along which conditions of competition can differ.

For this reason, the court concludes that the Commission's cumulation of imports from Turkey is not irreconcilable with its determination not to cumulate imports from Brazil.

Court No. 22-00351                                                                        Page 26

## CONCLUSION

The aspects of the Commission's <u>Five-Year Determination</u> that Erdemir challenges are in accordance with law and supported by substantial evidence.   The court concludes that (1) Commerce's <u>Amended Antidumping Determination</u> did not foreclose an affirmative material injury determination as to Turkey in the Commission's sunset review and that (2) the Commission's determination to cumulatively assess subject Turkish imports of hot-rolled steel is supported by substantial evidence.

The Commission's <u>Five-Year Determination</u> is sustained.  Judgment on the agency record will enter accordingly for Defendant and Defendant-Intervenors.

**SO ORDERED**.

/s/      *Gary S. Katzmann*

Gary S. Katzmann, Judge

Dated:  June 20, 2024
New York, New York

# TAB 3:

*Final Sunset Review Determination in Investigation Nos. 701–TA–545–546 (Review) and 731–TA–808 (Fourth Review), Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom*, 87 Fed. Reg. 74167 (Int'l Trade Comm'n Dec. 2, 2022)



personal identifying information in your protest, you should be aware that your entire protest—including your personal identifying information—may be made publicly available at any time. While you can ask us to withhold your personal identifying information from public review, we cannot guarantee we will be able to do so.

*Authority:* 43 U.S.C. chap. 3.

**Matthew J. Kurchinski,**
*Chief Cadastral Surveyor for Utah.*
[FR Doc. 2022–26313 Filed 12–1–22; 8:45 am]
**BILLING CODE 4310–25–P**

## INTERNATIONAL TRADE COMMISSION

**[Investigation Nos. 701–TA–545–546 and 731–TA–1291–1297 (Review), and 731–TA–808 (Fourth Review)]**

### Hot-Rolled Steel From Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom

**Determination**

On the basis of the record[1] developed in the subject five-year reviews, the United States International Trade Commission ("Commission") determines, pursuant to the Tariff Act of 1930 ("the Act"), that revocation of the countervailing duty order on hot-rolled steel flat products ("hot-rolled steel") from South Korea and the antidumping duty orders on hot-rolled steel from Australia, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom would be likely to lead to continuation or recurrence of material injury to an industry in the United States within a reasonably foreseeable time. The Commission further determines that revocation of the countervailing duty and antidumping duty orders on hot-rolled steel from Brazil would not be likely to lead to continuation or recurrence of material injury to an industry in the United States within a reasonably foreseeable time.[2]

---

[1] The record is defined in § 207.2(f) of the Commission's Rules of Practice and Procedure (19 CFR 207.2(f)).

[2] Commissioners Rhonda K. Schmidtlein and Randolph J. Stayin determine that revocation of the countervailing duty orders on hot-rolled steel from Brazil and South Korea and the antidumping duty orders on hot-rolled steel from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom would be likely to lead to continuation or recurrence of material injury to an industry in the United States within a reasonably foreseeable time.

**Background**

The Commission instituted these reviews on September 1, 2021 (86 FR 49057) and determined on December 6, 2021 that it would conduct full reviews (87 FR 3123, January 20, 2022). Notice of the scheduling of the Commission's reviews and of a public hearing to be held in connection therewith was given by posting copies of the notice in the Office of the Secretary, U.S. International Trade Commission, Washington, DC, and by publishing the notice in the **Federal Register** on June 16, 2022 (87 FR 36343). The Commission conducted its hearing on September 15, 2022. All persons who requested the opportunity were permitted to participate.

The Commission made these determinations pursuant to section 751(c) of the Act (19 U.S.C. 1675(c)). It completed and filed its determinations in these reviews on November 25, 2022. The views of the Commission are contained in USITC Publication 5380 (November 2022), entitled *Hot-Rolled Steel from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey and the United Kingdom: Investigation Nos. 701–TA–545–546 and 731–TA–1291–1297 (Review), and 731–TA–808 (Fourth Review).*

By order of the Commission.
Issued: November 25, 2022.

**William Bishop,**
*Supervisory Hearings and Information Officer.*
[FR Doc. 2022–26269 Filed 12–1–22; 8:45 am]
**BILLING CODE 7020–02–P**

## INTERNATIONAL TRADE COMMISSION

**[USITC SE–22–052]**

### Sunshine Act Meetings

*Agency Holding the Meeting:* United States International Trade Commission.
**TIME AND DATE:** December 5, 2022 at 11:00 a.m.
**PLACE:** Room 101, 500 E Street SW, Washington, DC 20436, Telephone: (202) 205–2000.
**STATUS:** Open to the public.
**MATTERS TO BE CONSIDERED:**
1. Agendas for future meetings: none.
2. Minutes.
3. Ratification List.
4. Commission vote on Inv. Nos. 731–TA–540 and 541 (Fifth Review) (Certain Welded Stainless Steel Pipe from South Korea and Taiwan). The Commission currently is scheduled to complete and file its determinations and views of the Commission on December 13, 2022.

5. Outstanding action jackets: none.
**CONTACT PERSON FOR MORE INFORMATION:** Tyrell Burch, Management Analyst, 202–205–2595.

The Commission is holding the meeting under the Government in the Sunshine Act, 5 U.S.C. 552(b). In accordance with Commission policy, subject matter listed above, not disposed of at the scheduled meeting, may be carried over to the agenda of the following meeting. Earlier notification of this meeting was not possible.

By order of the Commission.
Issued: November 29, 2022.

**William Bishop,**
*Supervisory Hearings and Information Officer.*
[FR Doc. 2022–26352 Filed 11–30–22; 11:15 am]
**BILLING CODE 7020–02–P**

## INTERNATIONAL TRADE COMMISSION

**[Investigation Nos. 701–TA–683 and 731–TA–1594–1596 (Preliminary)]**

### Paper File Folders From China, India, and Vietnam

**Determinations**

On the basis of the record[1] developed in the subject investigations, the United States International Trade Commission ("Commission") determines, pursuant to the Tariff Act of 1930 ("the Act"), that there is a reasonable indication that an industry in the United States is materially injured by reason of imports of paper file folders from China, India, and Vietnam provided for in subheading 4820.30.00 of the Harmonized Tariff Schedule of the United States, that are alleged to be sold in the United States at less than fair value ("LTFV") and to be subsidized by the government of India.[2]

**Commencement of Final Phase Investigations**

Pursuant to section 207.18 of the Commission's rules, the Commission also gives notice of the commencement of the final phase of its investigations. The Commission will issue a final phase notice of scheduling, which will be published in the **Federal Register** as provided in § 207.21 of the Commission's rules, upon notice from the U.S. Department of Commerce ("Commerce") of affirmative preliminary determinations in the investigations under §§ 703(b) or 733(b)

---

[1] The record is defined in § 207.2(f) of the Commission's Rules of Practice and Procedure (19 CFR 207.2(f)).

[2] 87 FR 67441 and 87 FR 67447, November 8, 2022.