## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

### EREGLI DEMIR VE CELIK FABRIKALARI T.A.S.,

*Plaintiff-Appellant,*

v.

### UNITED STATES INTERNATIONAL TRADE COMMISSION, UNITED STATES STEEL CORPORATION, CLEVELAND-CLIFFS INC., STEEL DYNAMICS, INC., SSAB ENTERPRISES LLC, NUCOR CORPORATION,

*Defendants-Appellees.*

_____

On Appeal from the United States Court of International Trade,
Case No. 1:22-cv-00351-GSK (Judge Gary S. Katzmann)

### NONCONFIDENTIAL BRIEF OF DEFENDANT-APPELLEE
### UNITED STATES INTERNATIONAL TRADE COMMISSION

**DAVID A.J. GOLDFINE**
**SPENCER J. TOUBIA**
**RAVI D. SOOPRAMANIEN**
Attorneys for Defendant-Appellee
Office of the General Counsel
U.S. International Trade Commission
500 E Street, S.W.
Washington, DC 20436
Tel: (202) 205-2322
Fax: (202) 205-3111

**DOMINIC L. BIANCHI**
General Counsel
Tel: (202) 205-3061

**ANDREA C. CASSON**
Assistant General Counsel
  for Litigation
Tel: (202) 205-3105

Dated: February 28, 2025

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... iii

STATEMENT OF RELATED CASES ...................................................................... 1

STATEMENT OF THE ISSUE ................................................................................. 1

STATEMENT OF THE CASE .................................................................................. 2

STATEMENT OF FACTS ........................................................................................ 4

    I.      The Commission's Affirmative Sunset Determination for
              Cumulated Subject Imports of HRS from Australia,
              Japan, the Netherlands, South Korea, Russia, Turkey, and
              the United Kingdom ..................................................................... 4

          A.     Cumulation .................................................................... 4

          B.     Likely Injury by Cumulated Subject Imports ............... 7

    II.     The Court of International Trade Decision ........................... 8

SUMMARY OF THE ARGUMENT ...................................................................... 12

ARGUMENT .......................................................................................................... 16

    I.      Standard of Review ......................................................... 16

    II.     The Commission's Finding That Subject Imports from
              Turkey Were Candidates for Cumulation Is Supported by
              Substantial Evidence and In Accordance with Law........... 19

          A.     Standard for "No Discernible Adverse Impact" ....... 21

          B.     The Commission's Discernible Adverse Impact
                 Finding for Turkey Is Supported by Substantial
                 Evidence .................................................................. 24

          C.     Erdemir's Challenges to the Commission's
                 Cumulation Analysis for Turkey Have No Merit ...... 25

          D.     Erdemir's "Condition Precedent" Argument Is
                 Unavailing ................................................................ 32

## <u>TABLE OF CONTENTS (cont'd)</u>

CONCLUSION.................................................................................................. 39

## **CONFIDENTIAL MATERIAL BRACKETED**

The material bracketed within the text on pages 5, 24, 29, and 37-38 describes sensitive nonpublic information regarding production operations, import and shipment information, and market share, financial, pricing, cost, and sales information from individual domestic producers and importers and was granted confidential treatment by the Commission. *See* 19 U.S.C. § 1677f(b)(1)(A); 19 C.F.R. § 201.6(a).

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Allegheny Ludlum Corp. v. United States*,
    475 F. Supp. 2d 1370 (Ct. Int'l Trade 2006) .........................................20, 31, 39

*Altx, Inc. v. United States*,
    370 F.3d 1108 (Fed. Cir. 2004) ...................................................................36, 37

*Am. Chain Ass'n v. United States*,
    746 F. Supp. 116 (Ct. Int'l Trade 1990) ..............................................................34

*Atl. Sugar, Ltd. v. United States*,
    744 F.2d 1556 (Fed. Cir. 1984) ..........................................................................17

*Avesta AB v. United States*,
    689 F. Supp. 1173 (Ct. Int'l Trade 1988) ............................................................33

*Cleo, Inc. v. United States*,
    501 F.3d 1291 (Fed. Cir. 2007) ..........................................................................16

*Cleveland Cliffs, Inc. v. United States*,
    693 F. Supp. 3d 1341 (Ct. Int'l Trade 2024) .......................................................31

*Cogne Acciai Speciali S.P.A. v. United States*,
    29 CIT 1168 (2005) .................................................................................*passim*

*Comm. for Fairly Traded Venezuelan Cement v. United States*,
    372 F. 3d 1284 (Fed. Cir. 2004) .........................................................................23

*Consol. Fibers Inc. v. United States*,
    571 F. Supp. 2d 1355 (Ct. Int'l Trade 2008) .......................................34, 36, 37

*Duferco Steel v. United States*,
    296 F.3d 1087 (Fed. Cir. 2002) ..........................................................................38

*Hitachi Metals, Ltd. v. United States*,
    949 F.3d 710 (Fed. Cir. 2020) ............................................................................17

*Kyocera Solar, Inc. v. U.S. Int'l Trade Comm'n*,
    844 F.3d 1334 (Fed. Cir. 2016) ..........................................................................16

**Cases (cont'd)**                                                                **Page(s)**

*Loper Bright Enters v. Raimondo*,
    603 U.S. 369 (2024)..................................................................19

*Matsushita Elec. Indus., Ltd. v. United States*,
    750 F.2d 927 (Fed. Cir. 1984) ...............................................18

*Metro. Area EMS Auth. v. Sec'y of Veterans Affs.*,
    122 F.4th 1339 (Fed Cir. 2024) .............................................19

*Mitsubishi Heavy Indus., Ltd. v. United States*,
    275 F.3d 1056, 1060 (Fed. Cir. 2001) ...................................18

*Neenah Foundry Co. v. United States*,
    155 F. Supp. 2d 766 (Ct. Int'l Trade 2001) ...............21, 22, 23, 38

*Nippon Steel Corp. v. United States*,
    458 F.3d 1345 (Fed. Cir. 2006) .......................................*passim*

*Nippon Steel Corp. v. United States*,
    494 F.3d 1371 (Fed. Cir. 2007) ...............................22, 24, 25

*Nucor Corp. v. United States*,
    296 F. Supp. 3d 1276 (Ct. Int'l Trade 2018) .........................35

*Nucor Corp. v. United States*,
    594 F. Supp. 2d 1320 (Ct. Int'l Trade T 2008)................24, 25

*Nucor Corp. v. United States*,
    601 F.3d 1291 (Fed. Cir. 2010) ........................................19, 20

*Nucor Corp. v. United States*,
    675 F. Supp. 2d 1340 (Ct. Int'l Trade 2010) ........................28

*Royal Bus. Machs., Inc. v. United States*,
    507 F. Supp. 1007 (Ct. Int'l Trade 1980) *aff'd*, 669 F.2d 692
    (CCPA 1982) ............................................................................33

*Siemens Energy, Inc. v. United States*,
    992 F. Supp. 2d 1315 (Ct. Int'l Trade 2014), *aff'd*, 806 F.3d 1367
    (Fed. Cir. 2015)......................................................................17

**Cases (cont'd)**                                                                    **Page(s)**

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944)...........................................................................19

*Taiwan Semiconductors Indus. Ass'n v. Int'l Trade Comm'n*,
    266 F.3d 1339 (Fed. Cir. 2001) ........................................................16

*Timex V.I., Inc. v. United States*,
    157 F.3d 879 (Fed. Cir. 1998)...........................................................19

*Timken Co. v. United States*,
    264 F. Supp. 2d 1264 (Ct. Int'l Trade 2003) ...................................38

*Timken U.S. Corp. v. United States*,
    421 F.3d 1350 (Fed. Cir. 2005) ........................................................17

*Usinor, Beautor et al., v. United States*,
    342 F. Supp. 2d 1267 (Ct. Int'l Trade 2004) ...............22, 24, 25, 36

*Usinor Industeel, S.A. v. United States*,
    27 CIT 1395 (2003) ...........................................................22, 23, 24, 25

*U.S. Steel Grp. v. United States*,
    96 F.3d 1352 (Fed. Cir. 1996) .......................................... 13, 17, 29

*Vt. Yankee Nucl. Power Corp. v. Nat. Res. Def. Counsel, Inc.*,
    435 U.S. 519 (1978)...........................................................................33

*Wieland-Werke AG v. United States*,
    525 F. Supp. 2d 1353 (Ct. Int'l Trade 2007) ...............22, 23, 24, 25

**Statutes**

19 U.S.C. § 1862 .........................................................................................7

19 U.S.C. § 1516a(a)(2)(B)(i)....................................................................16

19 U.S.C. § 1516a(b)(1)(B)(i)....................................................................16

19 U.S.C. § 1671d.......................................................................................33

19 U.S.C. § 1673d.......................................................................................33

**Statutes (cont'd)**                                                  **Page(s)**

19 U.S.C. § 1675a(a)..................................................................36

19 U.S.C. § 1675a(a)(1)..........................................................14, 33

19 U.S.C. § 1675a(a)(1)(A)........................................................37

19 U.S.C. § 1675a(a)(7)..............................................................20

19 U.S.C. § 1675a(b)...................................................................36

19 U.S.C. § 1675a(c)...................................................................36

19 U.S.C. § 1675(b)....................................................................33

19 U.S.C. § 1675(c).....................................................................18

19 U.S.C. § 1675(c)(1)(C) .....................................................14, 32

19 U.S.C. § 1677(24)..................................................................36

28 U.S.C. § 1581(c) ....................................................................34

28 U.S.C. § 2639(a)(1)...............................................................16

**Federal Register Notices**

87 Fed. Reg. 78,642 (Dep't of Commerce Dec. 22, 2022)........................................3

**Legislative Materials**

H.R. Rep. No. 98-725 (1984)......................................................23

Statement of Administrative Action to the Uruguay Round
Agreements Act, H.R. Doc. No. 103-316, vol. I (1994) ...............................*passim*

Uruguay Round Agreements Act, Pub. L. 103-465, 108 Stat. 4809
(Dec. 8, 1994)...............................................................................18

## STATEMENT OF RELATED CASES

Defendant-Appellee U.S. International Trade Commission is not aware of any other appeal in or from this action that was previously before this Court, or any other appellate court. The Court has designated this case as a companion case to *Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. ITC*, Case No. 24-2242 (Fed. Cir. 2024), and *Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. ITC*, Case No. 24-2243 (Fed. Cir. 2024).

## STATEMENT OF THE ISSUE

Erdemir challenges the decision of the Court of International Trade in *Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States Int'l Trade Comm'n*, 710 F. Supp. 3d 1341 (Ct. Int'l Trade 2024) (Appx0002-0027), in which the court issued a final opinion and order sustaining the Commission's affirmative determination for Turkey in the five-year reviews concerning *Hot-Rolled Steel from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545-546 and 731-TA-1291-1297 (Review), and 731-TA-808 (Fourth Review), USITC Pub. 5380 (Nov. 2022) (Appx1816-1968).

The Commission submits that the issue raised in this case is properly framed as:

Whether the Commission's finding that subject imports from Turkey were likely to be above the "no discernible adverse impact"

threshold if the order under review were revoked is supported by substantial evidence and in accordance with law.

## STATEMENT OF THE CASE

This appeal involves the Commission's affirmative determination in the five-year reviews concerning Hot-Rolled Steel ("HRS") from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom, Inv. Nos. 701-TA-545-546 and 731-TA-1291-1297 (Review), and 731-TA-808 (Fourth Review), USITC Pub. 5380, (Nov. 2022) (Appx1816-1968). On September 1, 2021, the Commission instituted its first five-year reviews of the countervailing duty ("CVD") orders on HRS from Brazil and South Korea and antidumping duty ("AD") orders on HRS from Australia, Brazil, Japan, the Netherlands, South Korea, Turkey, and the United Kingdom, and the fourth review of the AD order on HRS from Russia. 86 Fed. Reg. 49,057 (Sep. 1, 2021) (Appx2079-2082).

On November 25, 2022, the Commission issued final determinations in its sunset reviews. *Hot-Rolled Steel from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom*, 87 Fed. Reg. 74,167 (Dec. 2, 2022) (Appx1417). The Commission analyzed subject HRS imports from Turkey on a cumulated basis with subject imports from Australia, Japan, the Netherlands, South Korea, Russia, and the United Kingdom. Appx1910-1958. Based on this examination, the Commission determined that revocation of the

antidumping and countervailing duty orders on all seven cumulated subject countries including Turkey would likely lead to continuation or recurrence of material injury within a reasonably foreseeable time. Appx1958. The Commission, however, exercised its discretion not to cumulate imports from Brazil with those from the other subject countries, and determined that revocation of the antidumping and countervailing duty orders on imports from Brazil would not be likely to lead to continuation or recurrence of injury within a reasonably foreseeable time. Appx1900-1903; Appx1958-1967. The Department of Commerce ("Commerce") thereafter revoked the orders on HRS from Brazil. 87 Fed. Reg. 78,642 (Dec. 22, 2022).

The Commission published notice of the affirmative determination for Turkey on December 2, 2022. 87 Fed. Reg. 74,167 (Appx1417). As a result, Commerce published a notice of continuation of the AD order on Turkey. 87 Fed. Reg. 78,642 (Dec. 22, 2022).

On December 26, 2022, Erdemir appealed to the Court of International Trade for review of the Commission's affirmative sunset determination with respect to Turkey. On June 20, 2024, the Court of International Trade sustained the Commission's affirmative determination for Turkey in the HRS five-year reviews. Appx0002-0027. This appeal followed.

**STATEMENT OF FACTS**

Erdemir's statement of facts is selective and argumentative. Accordingly, the Commission provides its own statement.

**I.      The Commission's Affirmative Sunset Determination for Cumulated Subject Imports of HRS from Australia, Japan, the Netherlands, South Korea, Russia, Turkey, and the United Kingdom**

**A.      Cumulation**

In its affirmative sunset determination, the Commission cumulated subject imports of HRS from Turkey with subject imports of HRS from Australia, Japan, the Netherlands, South Korea, Russia, and the United Kingdom. The Commission's extensive analysis of cumulation consisted of three distinct examinations: (1) likelihood of no discernible adverse impact (Appx1848-1885); (2) likelihood of a reasonable overlap of competition among subject imports and between the domestic like product and subject imports from each source (Appx1885-1899); and (3) exercise of discretion to cumulate based on likely conditions of competition (Appx1899-1909). Accordingly, the Commission first considered whether imports from any of the subject countries were precluded from cumulation because they were likely to have "no discernible adverse impact" on the domestic industry upon revocation of the orders. The Commission determined that if the orders were revoked, subject imports from each subject country

(including Turkey) would not be likely to have no discernible adverse impact on the domestic industry.  Appx1848-1885.

Regarding whether subject imports from Turkey were likely to have no discernible adverse impact on the domestic industry, the Commission, consistent with the statutory framework and with its usual approach in five-year reviews, first summarized data gathered in both the original investigation and in the five-year review.  Appx1877-1880.  As the Commission explained, it did not include Colakoglu's data in the dataset for subject imports from Turkey during the review period since Colakoglu became a nonsubject producer after Commerce excluded Colakoglu from the AD order.  Appx1877 (n.276).  The Commission considered Erdemir's argument that subject imports from Turkey were not likely discernible without Colakoglu's data, but found "{g}iven the relative attractiveness of the U.S. market and the Turkish industry's excess capacity . . . it is not likely that there will be no discernible adverse impact if the antidumping duty order on {HRS} from Turkey {was} revoked even if exports from Colakoglu {were} no longer subject merchandise."  Appx1881 (n.298).  In finding that the subject industry in Turkey had excess capacity, the Commission relied on data indicating that the only two subject producers from Turkey during the period of review ("POR"), Erdemir and Habas, together had excess capacity totaling [ ## ] short tons in 2021, and also that Habas was adding 2.0 million metric tons of capacity in 2023.

Appx1880-1881. The Commission did not rely on Colakoglu's data in finding that the United States remained an attractive export market for subject producers in Turkey, as evidenced by higher prices in the U.S. market than in alternative third markets, Erdemir's significant and increasing exports to the U.S. market during the original period of investigation, and an AD order in Europe on Turkish HRS. Appx1881.

The Commission next analyzed and found that, upon revocation of the orders, there would likely be a "reasonable overlap of competition" among subject imports from all eight subject countries and between the domestic like product and imports from each subject source. Appx1885-1889. Its analysis evaluated and compared subject imports from each country on the basis of four factors (fungibility, channels of distribution, geographic markets, and simultaneous presence). Appx1885-1889.

Finally, the Commission explained why it was exercising its discretion and cumulating subject imports from all subject countries except Brazil. Appx1899-1910. It stated that it did not find that there would likely be significant differences in the conditions of competition between subject imports from Turkey and subject imports from Australia, Japan, the Netherlands, Russia, South Korea, and the United Kingdom if the orders were revoked. Appx1904-1909. In addition to the likely overlap of competition, the exporters in each of these subject countries

including Turkey had shown a demonstrated interest and incentive to compete in the U.S. market, an ability to compete in the U.S. market in large volumes given their production capacity, and with the exception of Australia, each subject industry exported substantial volumes of HRS. Appx1904-1909. The Commission exercised its discretion not to cumulate subject imports from Brazil with the other seven subject countries including Turkey because it found that different conditions of competition were likely to prevail for subject imports from Brazil compared to subject imports from all other subject sources, stemming mainly from the fact that subject imports from Brazil had an absolute quota under Section 232 of the Trade Expansion Act of 1962[1] that other subject countries including Turkey did not have. Appx1900-1903.

## B. Likely Injury by Cumulated Subject Imports

After exercising its discretion to cumulate subject imports from Turkey with subject imports from six other subject countries, the Commission determined that revocation of the orders on those seven countries would be likely to lead to the continuation or recurrence of material injury to the domestic industry in the reasonably foreseeable future. Appx1910-1958. After exercising its discretion not to cumulate subject imports from Brazil with subject imports from the other

---

[1] 19 U.S.C. § 1862.

subject countries stemming mainly from the fact that Brazil had a Section 232 absolute quota that Turkey and the other subject countries did not have, the Commission determined that revocation of the order on Brazil would not be likely to lead to continuance or recurrence of material injury. Appx1958-1967. Erdemir does not challenge any aspect of the Commission's affirmative likely injury findings based on an assessment of likely volume, likely price effects, and likely impact of cumulated subject imports.

## II.    The Court of International Trade Decision

Claiming that it should prevail as a matter of law, Erdemir argued before the CIT that past injury is a "condition precedent" for finding continuation or recurrence of material injury in a five-year review, and that there was no such "condition precedent" because the Commission's prior material injury determination for Turkey was rendered "inoperative" by Commerce's exclusion of Colakgolu from the AD order. Appx0014-0015. The CIT rejected this argument, emphasizing that Erdemir did not appeal the Commission's original affirmative determination for Turkey. Appx0015. Given that Erdemir failed to pursue such an appeal, the CIT concluded that "the Commission's original {affirmative} determination {for Turkey} remains a final and binding agency action." Appx0015. Accordingly, the CIT found that the Commission's original affirmative determination for Turkey established "a predicate material injury – a

'condition precedent,' as Erdemir styles it, Pl. Br. at 21 – from which the Commission may lawfully find that a 'continuation or recurrence' {of material injury} will 'likely' ensue." Appx0015-0016. The CIT reiterated that "{i}f Erdemir wishes to sap the {Commission's} <u>Original Determination</u> of the force that establishes a 'condition precedent' material injury, it must challenge (or have challenged) the <u>Original Determination</u> itself." Appx0020.

In rejecting Erdemir's "condition precedent" argument, the CIT also cited various finality and retroactivity concerns. In the CIT's view, Erdemir's position "would deprive all interested parties, including Erdemir, of the ability to ascertain the present legal effect of the Commission's <u>Original Determination</u> by reference to its published text" and "{t}his in turn would upset the basic principles of finality and certainty that underlie administrative law." Appx0016 (citations omitted). The CIT noted that Erdemir's approach "would leave navigators of the trade law labyrinth" without a "crucial navigational thread" since "{a}n interested party could not simply look to a Commission material injury determination as a controlling statement of the legal effects that flowed at the time of issuance." Appx0018. The CIT also cautioned that Commission determinations would become "subject to retroactive, undefined revisions and nullifications by subsequent non-Commission determinations – which, like {Commerce's} <u>Amended Antidumping Determination</u>, do not purport to automatically execute a

change in the Commission's material injury determination." Appx0018. The CIT observed that "{t}reating {Commerce's} <u>Amended Antidumping Determination</u> as a *de facto* amendment to the {Commission's} Original Determination would also frustrate the administrative scheme that Commerce and the Commission are jointly charged {by Congress} with administering" whereby the Commission conducts original investigations and sunset reviews and Commerce conducts annual administrative reviews of its own determinations. Appx0018. The CIT also rejected Erdemir's invitation to "retroactively incorporate {Erdemir's own} conclusions into the {Commission's} <u>Original Determination</u> without any kind of administrative proceeding or notice" and underscored that the "Commission itself is not even authorized by statute" to take such action. Appx0019-0020.

Next, Erdemir challenged the Commission's finding that subject imports from Turkey would not likely have no discernible adverse impact on the domestic industry upon revocation of the order. Appx0021-0022; Appx0025. The CIT affirmed the Commission's discernible adverse impact finding for Turkey in all challenged respects. Appx0022-0026.

The CIT rejected Erdemir's argument that the Commission improperly relied on "tainted" data from Colakoglu in its discernible impact analysis for Turkey. Appx0025. After reviewing the Commission's findings, the CIT concluded that the Commission had relied only on data that was indisputably Colakoglu-exclusive

in finding that subject imports would likely have a discernible adverse impact on the domestic industry. Appx0022-0024. The CIT concluded that "{n}one of these factors" that the Commission ultimately relied on for its discernible adverse impact finding for Turkey – the attractiveness of the market and the Turkish industry's excess capacity – involved Colakoglu or Colakoglu's data. Appx0022-0023. While acknowledging that the Commission had summarized its own prior findings from the original investigation referenced as "background" or for "illustrative comparison" purposes with the current data for the review period, the CIT emphasized that "{a}t no point did the Commission directly rely on data set that includes Colakoglu's pre-exclusion imports as a basis for its negative 'no discernible adverse impact' finding {for Turkey}." Appx0023.

Next, the CIT rejected Erdemir's argument that subject imports from Turkey would likely have no discernible adverse impact without Colakoglu's data included in the analysis. Appx0024-0025. The CIT observed that the Commission had expressly considered Erdemir's argument, but found subject imports from Turkey would not likely have no discernible adverse impact even without relying on Colakoglu's data. Appx0023-0024. The CIT concluded that Erdemir's argument on this issue amounted to an impermissible attempt to reweigh the evidence. Appx0024-0025.

Finally, Erdemir argued that the Commission's cumulation analysis for Turkey "cannot be reconciled" with the Commission's cumulation analysis for Brazil. Appx0025. The CIT also rejected this argument. Appx0025-0026. Explaining that Erdemir had challenged only discernible adverse impact and no other aspect of the Commission's cumulation analysis for Turkey, the CIT concluded that the Commission's discernible adverse impact findings for Turkey and Brazil were "the same" and "not just reconcilable" with each other. Appx0025. The CIT also observed that the cumulation analyses for Turkey and Brazil involved "separate and independent" statutory inquiries and "different metrics," with the former involving likely differences in conditions of competition for Brazil among all eight subject countries and the latter involving whether subject imports from Turkey alone "clear a low threshold of discernibility." Appx0025-0026.

## SUMMARY OF THE ARGUMENT

On its face, the Commission's affirmative five-year review determination refutes Erdemir's contention that the Commission's discernible adverse impact finding for Turkey improperly relied on data for Turkish nonsubject producer Colakoglu. In its discernible adverse impact analysis for Turkey, the Commission expressly found that Colakoglu was a nonsubject producer following Commerce's revocation of the antidumping duty order as to Colakoglu. Appx1877 (n.276).

12

In fact, Erdemir does not dispute that the data for the subject industry in Turkey collected by the Commission during the five-year reviews did not include Colakoglu as a subject producer. In rejecting Erdemir's argument, the CIT correctly found that "none" of the factors that the Commission relied on for its discernible adverse impact finding for Turkey involved Colakoglu's data, including notable and increasing excess capacity for subject producers Erdemir and Habas, and the attractiveness of the U.S. market for the Turkish industry without Colakoglu. Appx0022-0023. At bottom, Erdemir's complaint is really about the style of the Commission's opinion in summarizing background information, which cannot prevail under substantial evidence review as the lower court also concluded.

Erdemir's other arguments concerning discernible adverse impact amount to impermissible attempts to reweigh the evidence in its favor and should be rejected. *See, e.g.*, *Nippon Steel Corp. v. United States*, 458 F.3d 1345 at 1350, 1358-59 (Fed. Cir. 2006); *U.S. Steel Grp. v. United States*, 96 F.3d 1352, 1357 (Fed. Cir. 1996). Erdemir incorrectly claims that the Commission made findings that it did not make or ignored evidence that it expressly considered and discussed. In asking this Court to overrule the CIT and decline to uphold the Commission's determination, Erdemir relies on its own preferred characterization and reweighing of the evidence. As the lower court found, these arguments are insufficient to overcome the substantial evidence standard of review. Furthermore, Erdemir's

reliance on waived discretionary cumulation arguments are irrelevant, given that only the Commission's discernible adverse impact finding is at issue in this appeal. For this reason, Erdemir's references to purported inconsistencies between the Commission's discretionary cumulation analyses for Turkey and Brazil are unpersuasive, as the lower court also found, since on the issue disputed in this appeal – discernible adverse impact – the Commission found discernible adverse impact for both Turkey and Brazil. Appx0025.

Also unavailing is Erdemir's argument that a finding of prior material injury is a "condition precedent" to a five-year review. There is no such requirement in the statute. Instead, on the face of the statute, five-year reviews are prospective in nature, 19 U.S.C. § 1675a(a)(1), and may be conducted not only where there was an original finding of material injury, but also in cases involving suspension agreements and findings of threat of material injury. *See* 19 U.S.C. § 1675(c)(1)(C).

Regardless, as the lower court found, even assuming that there is condition precedent of a prior material injury determination, such a requirement was met here. Appx0015-0016. Erdemir ignores that the Commission made a finding of material injury for Turkey in the original investigations. Although Erdemir claims that material injury determination was flawed in light of Commerce's subsequent revocation of the order as to Colakoglu, it never appealed the Commission's final

material injury or negligibility determinations for Turkey in antidumping duty investigation. Thus, as the lower court correctly found, the Commission's final, unappealed material injury determination regarding the antidumping order on Turkey became an immutable final action. Appx0015-0016.

Equally unavailing are Erdemir's arguments that the Commission's original determination is flawed and cannot establish prior material injury in light of Commerce's subsequent exclusion of Colakoglu from the antidumping order. Erdemir misapprehends that the Commission does not make negligibility findings in five-year reviews and does not reconsider the validity of its prior material injury determination in five-year reviews. Erdemir also ignores that the Commission took the original determination into account as required by the statute and also treated Colakoglu as a nonsubject producer by removing it from the dataset for subject imports in order to adjust for the change resulting from Commerce's remand determination and revocation of the order as to Colakoglu. Accordingly, the original determination was properly considered in the Commission's five-year review determination that material injury was likely to continue or recur if the antidumping duty order on Turkey and orders on six other subject countries were revoked.

## ARGUMENT

### I.    Standard of Review

This Court applies the same standard of review as the Court of International

Trade, which means that this Court again assesses whether the Commission's

determination is "unsupported by substantial evidence on the record, or otherwise

not in accordance with law."  19 U.S.C. §§ 1516a(b)(1)(B)(i), (a)(2)(B)(i).[2]

Although this Court performs anew the lower court's review on appeal, this Court

has stated that it will give "great weight to 'the informed opinion of the Court of

International Trade.'"  *Cleo, Inc. v. United States*, 501 F.3d 1291, 1296 (Fed. Cir.

2007) (quoting *Nippon Steel Corp.*, 458 F.3d at 1351); *Kyocera Solar, Inc. v. U.S.

Int'l Trade Comm'n*, 844 F.3d 1334, 1338 (Fed. Cir. 2016); *see also Taiwan

Semiconductors Indus. Ass'n v. Int'l Trade Comm'n*, 266 F.3d 1339, 1343-44 (Fed.

Cir. 2001) ("{T}his court will not ignore the informed opinion of the {CIT} in

performing its review.  That court reviewed the record in considerable detail.  Its

opinion deserves due respect.") (citations omitted).

Under the substantial evidence standard, this Court will affirm the

Commission's determination if it is supported by the record as a whole, even if

---

[2] The Commission's determinations are presumed to be correct, and the
burden is on the party challenging a determination to demonstrate otherwise. 28
U.S.C. § 2639(a)(1).

some evidence detracts from the Commission's conclusion. *Hitachi Metals, Ltd. v. United States,* 949 F.3d 710, 716 (Fed. Cir. 2020); *see also Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562-64 (Fed. Cir. 1984). "It is the Commission's task to evaluate the evidence it collects during its investigation" and "{c}ertain decisions, such as the weight to be assigned a particular piece of evidence, lie at the core of that evaluative process." *U.S. Steel Grp.*, 96 F.3d at 1357. If "the totality of the evidence does not illuminate a black-and-white answer to a disputed issue, it is the role of the expert factfinder – here the majority of the Presidentially-appointed, Senate-approved Commissioners – to decide which side's evidence to believe." *Nippon Steel*, 458 F.3d at 1359.

The Commission is presumed to have considered the full record, and the fact that it did not explicitly discuss each piece of evidence does not establish that it "ignored" such evidence. *See, e.g.*, *Siemens Energy, Inc. v. United States*, 992 F. Supp. 2d 1315, 1324 (Ct. Int'l Trade 2014) ("The Commission need not address every piece of evidence presented by the parties; absent a showing to the contrary, the court presumes that the Commission has considered all of the record evidence."), *aff'd*, 806 F.3d 1367 (Fed. Cir. 2015). Instead, the Commission need only address the "issues material to {its} determination" so that the "'path of the agency may reasonably be discerned.'" *Timken U.S. Corp. v. United States*, 421 F.3d 1350, 1354 (Fed. Cir. 2005) (quoting Statement of Administrative Action to

the Uruguay Round Agreements Act, H.R. Doc. No. 103-316, vol. I, at 892 (1994)

("SAA")).[3]  In the end, when a party challenges the Commission's determination

under the substantial evidence standard, it has "'chosen a course with a high barrier

to reversal.'"  *Nippon Steel*, 458 F.3d at 1352 (quoting *Mitsubishi Heavy Indus.,*

*Ltd. v. United States,* 275 F.3d 1056, 1060 (Fed. Cir. 2001)).

As an overarching matter, Erdemir's attacks upon the Commission's

determinations depend upon an improper application of substantial evidence

review.  Throughout its opening brief, Erdemir largely ignores the record support

for the Commission's actual factual findings or cites to its preferred findings in

various impermissible attempts to reweigh the evidence.  At most, Erdemir points

to evidence – invariably considered and rejected by the Commission in its opinion

– that could have supported a factual finding contrary to the one the agency made.

In the end, it is neither "surprising nor persuasive" that Erdemir can point to

evidence "which detracts from the evidence which supports the Commission's

decision" or can "hypothesize a reasonable basis for a contrary determination."

*Matsushita Elec. Indus., Ltd. v. United States*, 750 F.2d 927, 936 (Fed. Cir. 1984).

---

[3] The SAA is an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements Act, which passed into law 19 U.S.C. § 1675(c).  *See* Pub. Law 103-465 §§ 102, 220, 108 Stat. 4809, 4819, 4861 (Dec. 8, 1994).

In its opening brief, Erdemir also misapprehends this Court's standard of review for statutory construction. *See* Erdemir Br. at 13-14. The Supreme Court has stated that "courts use every tool at their disposal to determine the best reading of the statute and resolve {any} ambiguity." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). Beyond the statute's text, the tools of statutory construction to ascertain Congress's purpose and intent include the statute's legislative history, the statute's structure, and the canons of statutory construction. *Metro. Area EMS Auth. v. Sec'y of Veterans Affs.*, 122 F.4th 1339, 1345 (Fed Cir. 2024) (citing *Timex V.I., Inc. v. United States*, 157 F.3d 879, 882 (Fed. Cir. 1998)). Furthermore, the Supreme Court continues to recognize that courts should be informed by agencies' expertise, interpretation and experience with statutes that Congress entrusted them to administer. *Loper Bright*, 603 U.S. at 402 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-40 (1944)).

## II. The Commission's Finding That Subject Imports from Turkey Were Candidates for Cumulation Is Supported by Substantial Evidence and in Accordance with Law

In a sunset review, the Commission must "determine whether revocation of an order . . . would be likely to lead to continuation or recurrence of material injury within a reasonably foreseeable time." 19 U.S.C. § 1675a(a)(l); *Nucor Corp. v. United States*, 601 F.3d 1291, 1293 (Fed. Cir. 2010). The Commission must

"consider the likely volume, price effect, and impact of imports of the subject merchandise on the industry if the order is revoked..." 19 U.S.C. § 1675a(a)(l). Under the statute, the Commission may cumulate the volume and other effects of the imports from countries subject to review if these imports are "likely to compete with each other and domestic like products in the United States market." 19 U.S.C. § 1675a(a)(7).[4]  However, the Commission may not cumulate imports from any country under review if those "imports are likely to have no discernible adverse impact on the domestic industry." *Id*.  It is the latter requirement of the cumulation provision that is at issue in this appeal.[5]

---

[4] The reviews must also be initiated on the same day. 19 U.S.C. § 1675a(a)(7).

[5] If these threshold criteria are satisfied, the Commission "may cumulatively assess the volume and effect of imports of the subject merchandise from all countries" subject to review. 19 U.S.C. § 1675a(a)(7).  As the word "may" indicates, the Commission retains discretion not to cumulate even where the statutory criteria are satisfied. *Id*.  Consistent with the plain language of the statute, this Court and the Court of International Trade have held that the Commission ultimately retains statutory discretion in sunset reviews not to cumulate subject imports from all countries even if both the threshold requirements for cumulation of discernible adverse impact and likely reasonable overlap in competition are satisfied. *See, e.g.*, *Nucor Corp. v. United States*, 601 F.3d at 1293; *Allegheny Ludlum Corp. v. United States*, 475 F. Supp. 2d 1370, 1378-81 (Ct. Int'l Trade 2006).  As discussed below and as the lower court found, the Commission's exercise of its discretion to cumulate Turkey with imports from the other six cumulated subject countries is not at issue in this appeal.

The principles governing the "discernible adverse impact" analysis are well-established. As the Commission's reviewing courts have explained, Congress extended the discretion to cumulate in sunset reviews "to address the concern that a domestic industry could be injured by the 'hammering effect' of unfairly traded imports from multiple countries, an effect that could be obscured if subject import levels were reviewed on a country-by-country basis." *Cogne Acciai Speciali S.P.A. v. United States*, 29 CIT 1168, 1172 (2005). Thus, the statute "'permit{s} cumulation of imports from various countries that each account individually for a very small percentage of total market penetration, but when combined may cause material injury.'" *Neenah Foundry Co. v. United States*, 155 F. Supp. 2d 766, 771 (Ct. Int'l Trade 2001) (quoting H.R. Rep. No. 98-725, at 37 (1984)); *Cogne Acciai*, 29 CIT at 1172-73.

### A.    Standard For "No Discernible Adverse Impact"

With respect to cumulation, Erdemir challenges only the Commission's predicate finding that subject imports from Turkey were candidates for cumulation. Specifically, Erdemir contests the Commission's finding that subject imports from Turkey fall above the statutory "no discernible adverse impact" standard. Notwithstanding Erdemir's assertion, the record plainly supports this finding, and consequently the Commission was not, as Erdemir contends, precluded from exercising its discretion to cumulate subject imports from Turkey with those from

other subject countries.  Erdemir cites no statutory authority for its challenge to the discernible adverse impact finding, but merely seeks to resurrect arguments aimed at reweighing the evidence that were dismissed by the Commission and found unpersuasive by the CIT.

As this Court has stated, "{t}he 'discernible adverse impact' standard presents a relatively low threshold" for the Commission.  *Nippon Steel Corp. v. United States*, 494 F.3d 1371, 1379 n.6 (Fed. Cir. 2007) ("*Nippon (GOES)*"); *see also Neenah Foundry*, 155 F. Supp. 2d at 774.  Notably, the discernible adverse impact standard is a different standard from that of the likely impact analysis relating to likely material injury.  *Usinor Industeel, S.A. v. United States*, 27 CIT 1395, 1399 (2003); *Nippon (GOES)*, 494 F.3d at 1379 n.6 ("It is not the same as finding a negative adverse impact, however, which is part of the ultimate analysis of whether the industry is likely to be materially injured.");  *Cogne Acciai,* 29 CIT at 1173 ("{The} adverse impact, or harm, can be discernible but not rise to a level sufficient to cause material injury).  Instead, the Commission must assess whether imports are likely to have a "'noticeable' or 'detectable' adverse impact'" on an industry if the order is revoked.  *Usinor, Beautor, et al. v. United States*, 342 F. Supp. 2d 1267, 1282 (Ct. Int'l Trade 2004) (internal citation omitted).  "Even a modest likely volume may satisfy the statutory standard." *Cogne Acciai*, 29 CIT at 1173; *Wieland-Werke AG v. United States*, 525 F. Supp. 2d 1353, 1365 (Ct. Int'l

Trade 2007). As reviewing courts have explained, the standard is "relatively easy for the {Commission} to satisfy." *Cogne Acciai*, 29 CIT at 1173; *Wieland-Werke*, 525 F. Supp. 2d at 1364.

Neither the statute nor the SAA provide specific guidance on what factors the Commission should consider when assessing whether certain subject imports are likely to have a discernible adverse impact on the domestic industry. *See, e.g.*, *Cogne Acciai*, 29 CIT at 1173. Accordingly, Congress has afforded the Commission considerable discretion to choose the factors considered in its discernible adverse impact analysis. S*ee, e.g., Comm. for Fairly Traded Venezuelan Cement v. United States,* 372 F. 3d 1284, 1289-90 (Fed. Cir. 2004). As the Commission explained in the determination at issue here, in the absence of specific statutory guidance regarding the no discernible adverse impact provision, the Commission has generally considered on an individual country basis "the likely volume of subject imports and the likely impact of those imports on the domestic industry within a reasonably foreseeable time if the orders are revoked." Appx1849. The Courts have affirmed this approach. *See, e.g.*, *Usinor Industeel*, 27 CIT at 1398; *Neenah Foundry*, 155 F. Supp. 2d at 776.

As it did in this case, the Commission has typically relied on a number of factors in its analysis of whether the subject imports from a particular country are likely to have a discernible adverse impact on the domestic industry. Those factors

include the amount of available capacity in the subject country, the existence of

higher pricing levels in the United States vis-à-vis other export markets, and

exporting patterns of subject producers, among other things. Moreover, reviewing

courts consistently have affirmed the Commission's reliance on these factors to

support an affirmative discernible adverse impact finding.[6]

### B. The Commission's Discernible Adverse Impact Finding for Turkey Is Supported by Substantial Evidence

As the CIT found, the Commission provided substantial evidence to support

its finding that subject imports from Turkey were likely to have a discernible

adverse impact on the domestic industry upon revocation of the order. Appx0020-

0027. The Commission reasonably found that subject producers in Turkey had

excess capacity and increasing capacity since two subject producers (Erdemir and

Habas) had excess capacity totaling [ ## ] short tons in 2021, and Habas

was adding 2.0 million metric tons of capacity in 2023. Appx1880-1881. The

Commission also reasonably found that the United States remained an attractive

market for subject producers in Turkey, as evidenced by higher prices in the U.S.

market than in alternative third markets, an AD order in Europe on Turkish HRS,

---

[6] *See, e.g.*, *Nippon (GOES)*, 494 F.3d at 1378-80; *Nucor Corp. v. United States*, 594 F. Supp. 2d 1320, 1343-47 (Ct Int'l Trade 2008); *Wieland-Werke*, 525 F. Supp. 2d at 1363-67; *Usinor Beautor*, 342 F. Supp 2d at 1286-88; *Cogne Acciai*, 29 CIT at 1171-85; *Usinor Industeel*, 27 CIT at 1398-1403.

and Erdemir's significant and increasing exports to the U.S. market during the original period of investigation. Appx1881.

Based on this information, the Commission's discernible adverse impact finding for Turkey is supported by substantial evidence. It was, moreover, the same type of analysis upheld by this Court and the Court of International Trade in similar cases.[7]

## C. Erdemir's Challenges to the Commission's Cumulation Analysis for Turkey Have No Merit

Erdemir mistakenly argues that the Commission relied on Colakoglu's data in finding discernible adverse impact for subject imports from Turkey. *See* Erdemir Br. at 20-26. As the lower court found in rejecting this argument, "none" of the factors that the Commission relied on for its discernible adverse impact finding involved Colakoglu's data. Appx0022-0023. Importantly, Erdemir does not dispute that the Commission correctly found that the data for the subject industry in Turkey collected during the five-year reviews did not include Colakoglu as a subject producer. Appx1877 (n.276); Appx1879.

---

[7] *See, e.g.*, *Nippon (GOES)*, 494 F.3d at 1378-80; *Nucor*, 594 F. Supp. 2d at 1343-47; *Wieland-Werke*, 525 F. Supp. 2d at 1363-67; *Usinor Beautor*, 342 F. Supp 2d at 1286-88; *Cogne Acciai*, 29 CIT at 1171-85; *Usinor Industeel*, 27 CIT at 1398-1403.

Nor did the Commission rely on Colakoglu data in its discernible adverse impact analysis. In finding discernible adverse impact given the Turkish industry's excess capacity, the Commission relied exclusively on data from the review period concerning subject producers' (Erdemir's and Habas's) capacity and excess capacity. Appx1880-1881. Likewise, in finding discernible adverse impact given that the United States would likely be an attractive market for subject producers in Turkey, the Commission relied on data from the review period showing higher prices in the U.S. market than in alternative third markets for subject producers Erdemir and Habas, Erdemir's acknowledgment in its questionnaire response that the U.S. market was higher-priced than alternative export markets, and an existing AD order on Turkish HRS in Europe during the review period. Appx1881. In support of its finding that the United States would likely be an attractive market for Turkish subject producers, the Commission also cited data from the original period of investigation regarding Erdemir's significant and increasing exports to the U.S. market during that period. Appx1881. As the lower court correctly concluded, the Commission relied almost entirely for these findings on data from the review period, which was, indisputably, Colakoglu-exclusive. Appx0022-0023. As the lower court also correctly found, even in the single instance where the Commission relied upon data from the original investigation, the Commission also used Colakoglu-exclusive data by considering only Erdemir's exports to the United

States for that period. Appx0023. Accordingly, this Court should reject Erdemir's argument just as the lower court did.

Erdemir rehashes its losing argument before the CIT by again referencing certain volume and price data from the original investigation (*see* Erdemir Br. at 21-24). In rejecting Erdemir's argument, the lower court correctly found that the Commission summarized the data from the original investigation as background material and ultimately did not rely on it in finding discernible adverse impact for Turkey. Appx0023.[8] Moreover, Erdemir ignores that the Commission's summary of data from the original investigations was factually accurate and consistent with its standard approach in discernible adverse impact analysis in sunset reviews based on the statutory direction that the Commission in five-year reviews take into account its prior injury determination, including subject import volumes and price effects.[9] At bottom, Erdemir's complaint is really about the style of the

---

[8] The CIT found that "{a}t no point did the Commission directly rely on a data set that includes Colakoglu's pre-exclusion imports as a basis for its negative 'no discernible adverse impact' finding."). Appx0023. In rejecting Erdemir's argument, the CIT specifically concluded that the Commission referenced pre-order volumes for Colakoglu as background and did not ultimately rely on that information in finding discernible adverse impact for Turkey. Appx0023 (n.10).

[9] *See* 19 U.S.C. § 1675a(a)(l)(A); *see also* SAA at 884 (indicating that "the period preceding the issuance of an order" is particularly "important" in five-year reviews as it "is the most recent time during which imports of subject merchandise competed in the U.S. market free of the discipline of an order or agreement"). The requirement that the Commission "take into account" its findings in the original affirmative injury determination does not "direct the {Commission} to distinguish

Commission's opinion in summarizing background information, which as the lower court correctly concluded, cannot prevail under substantial evidence review.

Also unavailing is Erdemir's argument that subject imports from Turkey were not discernible without Colakgolu's data. *See* Erdemir Br. at 24-25. The Commission expressly considered and rejected Erdemir's argument on this very issue by finding discernible adverse impact for Turkey even without Colakoglu given the excess capacity and attractiveness of the U.S. market for subject producers in Turkey. Appx1881 (n.298). Indeed, the lower court properly rejected Erdemir's challenge on this point as an impermissible attempt to reweigh the evidence. Appx0024-0025. Erdemir's attempt to reweigh the evidence is especially misguided since, as the CIT also observed, discernible adverse impact is a "low bar" to satisfy under the caselaw from the Commission's reviewing courts. Appx0024.

Erdemir also cannot prevail under substantial evidence review by pointing to evidence that the Commission expressly considered and weighed in its discernible adverse impact analysis for Turkey. *See* Erdemir Br. at 24-25. Erdemir ignores that the Commission specifically considered and discussed the review period data cited

_____

every factor of its original investigations findings from those made in a sunset review." *Nucor Corp. v. United States*, 675 F. Supp. 2d 1340, 1356 (Ct. Int'l Trade 2010). Here, the Commission complied with the statute by taking into account its volume and price data from the original investigation.

by Erdemir concerning the Turkish industry's production, capacity utilization, exports as a share of total shipments and to the United States, and the market share of subject imports from Turkey. Appx1877-1880. In other words, the Commission took into account all the data, and reasonably found likely discernible adverse impact, especially given the Turkish industry's notable excess and increasing capacity and the attractiveness of the U.S. market for subject producers in Turkey. Here again, Erdemir's argument amounts to an impermissible attempt to reweigh the evidence in its favor and should be rejected. *See, e.g.*, *Nippon Steel*, 458 F.3d at 1350; *U.S. Steel Grp.*, 96 F.3d at 1357.

Similarly misguided is Erdemir's allegation that the Commission found that the subject industry in Turkey was "export-oriented" and ignored testimony that the Turkish industry was not focused on the U.S. market. *See* Erdemir Br. at 21-22. First, the Commission nowhere found that the Turkish industry was export-oriented. Instead, the Commission observed that the Turkish industry exported substantial quantities of exports of HRS from 2016 through 2021, ranging from [ ## ] percent to [ ## ] percent of total shipments. Appx1879-1880. Second, the Commission explicitly considered evidence that Erdemir claims was ignored. In fact, the Commission acknowledged Erdemir's growing home market argument, *i.e.*, that Turkish subject producers stated that they "focus their sales primarily on their growing home market and non-U.S. export markets such as the {EU}." Appx1848

(n.133). The Commission cited to the facts presented in Erdemir's prehearing and posthearing briefs discussing Turkish trade measures that formed the basis for Erdemir's argument. Appx1848 (n.133) (citing Appx2103-2104, Appx2111-2114, Appx2503-2504, Appx2507-2508). Despite this assertion, the Commission still found that in light of Erdemir's exports to the U.S. market during the period of review, the EU antidumping order on Turkish HRS, and relatively high prices in the U.S. market, the United States remained an attractive market for Turkish subject producers. Appx1880-1881. As the lower court correctly found, the Commission had a substantial evidentiary basis for its finding that the United States was an attractive market for the subject industry in Turkey. Appx0022-0023. Erdemir's argument on this particular issue amounts to another impermissible attempt to reweigh the evidence.

Equally unavailing is Erdemir's argument that the Commission inconsistently exercised its discretion to cumulate Turkey but not Brazil. *See* Erdemir Br. at 25-26. As the lower court found, Erdemir only challenged the Commission's discernible adverse impact finding for Turkey and has not challenged any aspect of the Commission's discretionary cumulation analysis. Appx0025. The Commission did not find that imports from either Turkey or Brazil met the no discernible adverse impact threshold. Thus, contrary to Erdemir's claim, there is nothing irreconcilable between the Commission's findings on the issue joined in this

appeal – the Commission's discernible adverse impact finding for Turkey – and the Commission's ultimate exercise of its discretion to not cumulate imports from Brazil.[10]

Erdemir's reliance on *Allegheny Ludlum* (Erdemir Br. at 21) is especially misplaced since that case did not involve discernible adverse impact and instead affirmed the Commission's exercise of its discretion not to cumulate subject imports. *See Allegheny Ludlum Corp. v. United States*, 475 F. Supp. 2d 1370, 1378-81 (Ct. Int'l Trade 2006). As discussed above, the Commission's exercise of its discretion to not cumulate is not at issue in this appeal, as the lower court found.[11] Even more far-fetched is Erdemir's reliance upon the Commission's

---

[10] Even on the merits, Erdemir's comparison to the discretionary determination not to cumulate imports from Brazil does not withstand scrutiny. While Erdemir now argues that volumes for Turkey during the original investigation are somehow "analogous" to the current Section 232 quota on Brazil (Erdemir Br. at 25-26), the Commission reasonably exercised its discretion not to cumulate Brazil and Turkey based on differences in likely conditions of competition since Brazil had an absolute quota that acted as a hard cap on its annual volume during the POR while Turkey had no such quota. Appx1900-1903. Notably, the Court of International Trade affirmed the Commission's exercise of its discretion not to cumulate Brazil and Turkey for this reason in another appeal involving a Section 232 absolute quota for Brazil. *See Cleveland Cliffs, Inc. v. United States*, 693 F. Supp. 3d 1341, 1351-61 (Ct. Int'l Trade 2024).

[11] Nor did Erdemir ever argue before the Commission during the five-year reviews that the Commission should exercise its discretion to not cumulate subject imports from Turkey because of differing conditions from other subject imports. Even in its brief to this Court, Erdemir does not challenge the Commission's finding that subject imports from Turkey would likely compete under similar

---

negligibility analysis for Turkey in the original CVD investigation. *See* Erdemir Br. at 24. That comparison is inapposite for two reasons, specifically that (1) original investigation cumulation analyses do not involve consideration of discernible adverse impact, and (2) five-year reviews do not have a negligibility component.

## D. Erdemir's "Condition Precedent" Argument Is Unavailing

Erdemir argues, incorrectly, that a finding of prior material injury is a "condition precedent" to a five-year review. *See* Erdemir Br. at 16-18. As an initial matter, Erdemir overlooks that the Commission conducts five-year reviews of AD and CVD orders for which it did not find current material injury, *i.e.*, cases involving suspension agreements and findings of threat of material injury. *See* 19 U.S.C. § 1675(c)(1)(C).[12]

---

conditions of competition with the other six cumulated subject countries in exercising its discretion to cumulate subject imports from all seven countries.

[12] Congress expressly intended for the nature of any original injury determination, *i.e.*, whether the domestic injury was found to be materially injured or threatened with material injury (or materially retarded), to have no bearing on the Commission's prospective-looking analysis in five-year reviews. Specifically, the SAA states that "{t}he likelihood of injury standard applies regardless of the nature of the Commission's original determination (material injury, threat of material injury, or material retardation of an industry). Likewise, the standard applies to suspended investigations that were never completed." SAA at 883. Accordingly, in such matters, the Commission conducts an analysis of whether termination of a suspension agreement will lead to continuation or recurrence of material injury despite there being no underlying injury determination at all.

Moreover, the statute governing sunset reviews provides that the "Commission shall determine whether revocation of {the} order . . . would be

Regardless, as the lower court found, even if there was a condition precedent of a prior material injury determination required for conducting five-year reviews, such requirement would have been met here. Appx0023. Erdemir ignores that, as the lower court found, the Commission made a finding of material injury for Turkey in the original investigations. Appx0015. The Commission's original injury and negligibility determinations in original investigations are "final determination{s}" made by the Commission, 19 U.S.C. §§ 1671d, 1673d (emphasis added), and should be treated as such. Appx0015-0016.[13] As the lower court found, Erdemir could have appealed the Commission's final affirmative

---

likely to lead to continuation or recurrence of material injury within a reasonably foreseeable time." 19 U.S.C. § 1675a(a)(1). Thus, on the face of the statute, five-year reviews are prospective in nature and do not require a prior finding of material injury. *See* 19 U.S.C. § 1675a(a)(l)(A).

[13] *See Vt. Yankee Nucl. Power Corp. v. NRDC*, 435 U.S. 519, 554–55 (1978) (noting the interest of "finality of agency decisions" and that "{if} litigants might demand rehearings as a matter of law because some new circumstance has arisen, some new trend has been observed, or some new fact," "there would be little hope that the administrative process could ever be consummated in an order that would not be subject to reopening") (quotations omitted); *Avesta AB v. United States*, 689 F. Supp. 1173, 1180 (Ct. Int'l Trade 1988) ("{A} request for review of an affirmative injury determination and the resultant review investigation are premised upon an underlying finding of injury from dumping or subsidization which is entitled to deference and should not be disturbed lightly.") (citing *Royal Bus. Machs., Inc. v. United States*, 507 F. Supp. 1007, 1014 n. 18 (Ct. Int'l Trade 1980) ("The very strict controls on administrative review of prior determinations, found in 19 U.S.C. § 1675(b), are another good indication that Congress did not want these determinations to remain in a state of flux."), *aff'd*, 669 F.2d 692 (CCPA 1982)).

injury determination for Turkey in the antidumping investigation pursuant to 28

U.S.C. § 1581(c), in accordance with Congress' carefully crafted remedial scheme.

Appx0015; Appx0020.  Erdemir chose not to do so.  Appx0015.  Nor did any

respondent interested party appeal the Commission's affirmative injury

determination concerning dumped imports from Turkey.  Thus, the Commission's

final, unappealed determination regarding the AD order on Turkey became an

immutable final action for all intents and purposes.  Appx0015; *see also Am. Chain*

*Ass'n v. United States*, 746 F. Supp. 116, 118 (Ct. Int'l Trade 1990) ("{A}

determination becomes final when a litigant misses the statutory deadline for

challenging that determination."); *Consol. Fibers*, *Inc. v. United States*, 571 F.

Supp. 2d 1355, 1360 (Ct. Int'l Trade 2008).  As the lower court found, the

Commission's original material injury determination for Turkey in the

antidumping investigation was a final, unappealed determination that "establishes a

predicate material injury – a 'condition precedent' as Erdemir styles it, Pl. Br. at 21

– from which the Commission may lawfully find that a 'continuation or

recurrence' will 'likely' ensue."  Appx0015-0016.  In the end, Erdemir cannot

overcome that it did not appeal the Commission's original affirmative determination for Turkey in the antidumping investigation.[14]

Equally unavailing are Erdemir's arguments that the Commission's original determination is flawed and cannot establish prior material injury in light of Commerce's subsequent exclusion of Colakoglu from the antidumping order. Erdemir is wrong for several reasons. First, insofar as Erdemir argues that the Commission is required to revisit and revise original injury and negligibility determinations (Erdemir Br. at 16-18), Erdemir misapprehends that the

---

[14] As the Commission and the defendant-intervenors explained in their post-argument submissions to the Court of International Trade (Appx2043-2044), Erdemir participated as a defendant-intervenor in petitioner's appeal of the Commission's negligibility determination in the CVD case. *Nucor Corp. v. United States*, 296 F. Supp. 3d 1276, 1294 (Ct. Int'l Trade 2018). Meanwhile, notwithstanding that Commerce never issued a CVD order on subject imports from Turkey, Erdemir filed its own appeal from Commerce's affirmative CVD determination, presumably as a protective measure in case Nucor succeeded in the Commission litigation. Appx2047-2057 (Attachment A to Commission's post-argument submission). Erdemir then joined a request for stay of its appeal pending completion of the *Nucor* litigation. Appx2058-2064 (Attachment B to Commission's post-argument submission). And, contrary to Erdemir's assertion before the CIT that the court would not "allow a party to file an appeal and then stay it pending the appeal of a decision by another agency," (Appx1997), that is exactly what the Court of International Trade did in the CVD case. Appx2065-2066 (Attachment C to Commission's post-argument submission).

Commission does not make negligibility findings in five-year reviews. *See, e.g.*, *Usinor Beautor*, 342 F. Supp. 2d at 1275, 1281.[15]

Second, the Commission does not reconsider the validity of its prior material injury determination in five-year reviews despite Erdemir's argument to the contrary (Erdemir Br. at 19-20). As the Court of International Trade correctly reasoned in this case, as well as a previous one, the statute "does not require a full-blown reconsideration of the original injury determination." *Consol. Fibers*, 571 F. Supp. 2d at 1360. As the lower court found, Erdemir is requesting an impermissible remand for the Commission to do what it cannot do as a matter of law in five-year review – reconsider its original negligibility and injury determinations. Appx0019-0020; *see also Altx, Inc. v. United States*, 370 F.3d

---

[15] The "negligible imports" provision of the statute only applies in original investigations. 19 U.S.C. § 1677(24) (providing that imports are negligible if less than 3 percent of during the 12 months preceding the filing of the petition). Negligibility simply is not an issue in sunset reviews, where the data covers a period of review during which the remedial orders have already been in place. *See generally* 19 U.S.C. §§ 1675a(a)–(c); *see also Usinor Beautor.*, 342 F. Supp. 2d at 1275, 1281 (upholding the Commission's interpretation and practice that under the act, numerical negligibility findings are not applicable in discernible adverse impact analyses in five-year reviews).

1108, 1123 (Fed. Cir. 2004) ("{D}eclin{ing} to ask more of the Commission than required by the statute.").

Third, Erdemir's arguments here are not within the purview of this appeal since they constitute "a thinly veiled attempt to continue to press for a reconsideration of the original injury determinations, arguments that this Court {is} already address{ing}" in another appeal. *Consol. Fibers*, 571 F. Supp. 2d at 1360.

Fourth and finally, Erdemir also ignores that the Commission took the original determination into account as required by the statute (19 U.S.C. § 1675a(a)(1)(A); *see also* SAA at 883) and also treated Colakoglu as a nonsubject producer by removing it from the dataset for subject imports in order to adjust for the change resulting from Commerce's remand determination and revocation of the order as to Colakoglu. Appx1877 (n.276). Indeed, Erdemir does not dispute that Commission expressly found that Colakoglu was a nonsubject producer and that the Commission did not even include Colakoglu in the data for the Turkish industry during the current period of review. Contrary to Erdemir's assertions, the Commission considered that Colakoglu is excluded from the order as a nonsubject producer even when it took into account data from the original investigations.[16]

---

[16] For example, the Commission explicitly acknowledged that data gathered during the original investigations concerning the Turkish industry included Colakoglu and that Commerce "subsequently excluded Colakoglu from the antidumping duty order." Appx1877 (n.276). The Commission then indicated in the next paragraph that "{a}lthough Erdemir accounted for [ ## ] percent of

Erdemir's insistence, however, that the Commission was required to do more is based on the flawed premise that a non-appealed Commission determination is never truly final.  As the cases cited above mandate, however, this proposition does not hold up.  *See also Duferco Steel v. United States*, 296 F.3d 1087, 1097 (Fed. Cir. 2002) (during a scope ruling Commerce cannot modify the scope of a final order).  Likewise, the statute does not authorize, let alone require, the Commission to revise its final original determinations during five-year reviews.  Nor does anything in the statute extinguish the forward-looking, counter-factual nature of five-year reviews.  *See Neenah Foundry*, 155 F. Supp. 2d at 773 (taking into account means "recalling the past in attempting to predict future trends"); *Timken Co. v. United States*, 264 F. Supp. 2d 1264, 1278, 1274 (Ct. Int'l Trade 2003) (five-year reviews involve a "counter-factual analysis" and "neither the statute nor its legislative history directs the ITC to distinguish every factor of its original

---

reported production in Turkey in 2015, it only accounted for [ **##** ] percent of the exports to the United States in 2015; currently nonsubject producer Colakoglu was responsible for [ **##** ] of reported exports from Turkey to the United States." Appx1878.  The Commission also noted that most pricing product comparisons from the original investigations were likely from Colakoglu.  Appx1880 (n.291). Nonetheless, to the extent the Staff Report from the original investigations included a table excluding Colakoglu's imports, the Commission, where applicable, referred to Table H-1 of the original Staff Report noting that this table showed "subject imports from Turkey minus Colakoglu's imports."  Appx1878 (n.280).  This careful parsing of the data reflects that, to the extent possible, the Commission's consideration of the original investigation information regarding Turkey focused on data exclusive of Colakoglu's products.

investigation findings from those made in a sunset review determination");
*Allegheny Ludlum*, 475 F. Supp. 2d at 1383-84 (Commission properly relied on pre-order evidence; subject producer's changing ownership structure from the investigation to the review was not in itself dispositive). Accordingly, the original determination was properly considered in the Commission's five-year review determination that material injury was likely to continue or recur if the antidumping duty order on Turkey and orders on six other subject countries were revoked.

## CONCLUSION

For the foregoing reasons, the Commission respectfully requests that this Court affirm the Commission's five-year review determination with respect to Turkey.

Respectfully submitted,

Dominic L. Bianchi
General Counsel

*/s/ Andrea C. Casson*
Andrea C. Casson
Assistant General Counsel for Litigation

*/s/ Ravi D. Soopramanien*
Ravi D. Soopramanien
David A.J. Goldfine
Spencer Toubia
Attorney Advisors
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC  20436
Tel: (202) 205-3492
Ravi.Soopramanien@usitc.gov

*Counsel for Defendant-Appellee*
*U.S. International Trade Commission*

February 28, 2025

## CERTIFICATE OF COMPLIANCE WITH CONFIDENTIALITY REQUIREMENTS

This brief complies with the limitations and requirements related to confidential information set forth in Fed. Cir. R. 28(d). This brief contains six (6) unique words (including numbers) marked as confidential, as identified and described in the Table of Contents in the public version of the brief.

/s/ Ravi D. Soopramanien
Ravi D. Soopramanien
*Attorney for Defendant-Appellee*
*U.S. International Trade Commission*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of Fed. Cir. R. 32(b). The brief contains 8,896 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.


*/s/ Ravi D. Soopramanien*
Ravi D. Soopramanien

*Attorney for Defendant-Appellee*
*U.S. International Trade Commission*


Dated:  February 28, 2025

**CERTIFICATE OF SERVICE**

I, Ravi D. Soopramanien, hereby certify on this 28nd day of February 2025

that notice of the foregoing **NONCONFIDENTIAL BRIEF OF DEFENDANT-**

**APPELLEE UNITED STATES INTERNATIONAL TRADE COMMISSION**

was served on counsel of record by the Court's CM/ECF system.

/s/ Ravi D. Soopramanien
Ravi D. Soopramanien
Attorney for Defendant-Appellee
U.S. International Trade Commission
500 E Street, SW, Suite 707
Washington, DC 20436
tel. (202) 205-3492
fax (202) 205-3111
Ravi.Soopramanien@usitc.gov

*Attorney for Defendant-Appellee*
*U.S. International Trade Commission*