**2024-2249**

# United States Court of Appeals for the Federal Circuit

EREGLI DEMIR VE CELIK FABRIKALARI T.A.S.,

*Plaintiff-Appellant,*

v.

UNITED STATES INTERNATIONAL TRADE
COMMISSION, UNITED STATES STEEL CORPORATION,
CLEVELAND-CLIFFS INC., STEEL DYNAMICS, INC.,
SSAB ENTERPRISES LLC, NUCOR CORPORATION,

*Defendants-Appellees.*

Appeal from the United States Court of International Trade,
Case No. 1:22-cv-00351-GSK, Hon. Judge Gary S. Katzmann

**PLAINTIFF-APPELLANT'S REPLY BRIEF**

CHRISTINE M. STREATFEILD
JUSTIN R. BECKER
BAKER & MCKENZIE LLP
815 Connecticut Avenue, N.W.
Washington, DC 20006
(202) 835-6111
christine.streatfeild@bakermckenzie.com

*Counsel for Plaintiff-Appellant*

April 4, 2025

**TABLE OF CONTENTS**

*Page*

INTRODUCTION ...................................................................................................1

ARGUMENT ........................................................................................................2

I. THE COMMISSION FAILED TO CONSIDER ALL MATERIAL
FACTS BEFORE IT DURING THE SUNSET REVIEW..................................3

II. ERDEMIR SEEKS TO HAVE THE COMMISSION CONSIDER
ALL MATERIAL EVIDENCE ON THE RECORD .........................................8

A. Erdemir Does Not Seek Reconsideration of or Amendment to
the Original Investigation .................................................................8

B. Erdemir Does Not Seek to Reweigh Evidence.............................................17

CONCLUSION ....................................................................................................22

**Page(s)**

**Administrative Determinations**

*Certain Hot-Rolled Steel Flat Products From the Republic of Turkey:*
*Final Affirmative Determination of Sales at Less Than Fair Value*,
81 Fed. Reg. 53428 (Dep't of Commerce Aug. 12, 2016)....................................9

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan,*
*Korea, the Netherlands, Turkey, and the United Kingdom*,
Inv. Nos. 701-TA-545-547 and 731-TA-1291-1297 (Final), USITC
Pub. 4638 (Sept. 2016) ................................................................................4, 10

*Certain Hot-Rolled Steel Flat Products from Turkey: Notice of Court*
*Decision Not in Harmony with the Amended Final Determination*
*in the Less-Than-Fair-Value Investigation; Notice of Amended*
*Final Determination, Amended Antidumping Duty Order; Notice of*
*Revocation of Antidumping Duty Order in Part; and*
*Discontinuation of the 2017-18 and 2018-19 Antidumping Duty*
*Administrative Reviews, in Part*, 85 Fed. Reg. 29399 (Dep't of
Commerce May 15, 2020) ...................................................................................9

*Hot-Rolled Steel Flat Products From Australia, Brazil, Japan,*
*Netherlands, Russia, South Korea, Turkey, and the United*
*Kingdom*,
Inv. Nos. 701-TA-45-546 and 731-TA-1291-1297 (Review), and
731-TA-808 (Fourth Review), USITC Pub. 5380 (Nov. 2022) ............4, 5, 6, 20

*Malleable Cast Iron Pipe Fittings from Brazil, Japan, Korea, Taiwan,*
*and Thailand*,
Inv. Nos. 731-TA-278-280 (Review) and 731-TA-347-348
(Review), USITC Pub. 3274 (Feb. 2000).........................................................19

**Cases**

*Atl. Sugar, Ltd. v. United States*,
744 F.2d 1556 (Fed. Cir. 1984) .........................................................................3

*Consol. Fibers, Inc. v. United States*,
571 F. Supp. 2d 1355 (Ct. Int'l Trade 2008)....................................13, 14, 15, 16

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC*,
  Case No. 24-2242 (Fed. Cir. 2024)........................................................................1

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC*,
  Case No. 24-2243 (Fed. Cir. 2024)........................................................................1

*Nippon Steel Corp. v. United States*,
  337 F.3d 1373 (Fed. Cir. 2003) .............................................................................3

*Timken U.S. Corp. v. United States*,
  421 F.3d 1350 (Fed. Cir. 2005) .............................................................................3

*Universal Camera Corp. v. NLRB*,
  340 U.S. 474 (1951)......................................................................................7, 13

*Usinor Industeel, S.A., v. United States*,
  26 CIT 467 (2002) ...............................................................................................19

## Statutes

19 U.S.C. § 1675a(a)(1)(A) ........................................................................................20

## Other Authorities

*Uruguay Round Agreements Act, Statement of Administrative Action*,
  H.R. Doc. No. 103-316, vol. 1, 407, *reprinted in* 1994
  U.S.C.C.A.N. 4040 ....................................................................................*passim*

# INTRODUCTION

The overarching issue in this case and companion cases *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC*, Case No. 24-2242 (Fed. Cir. 2024) and *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC*, Case No. 24-2243 (Fed. Cir. 2024), is the same – namely, can the U.S. International Trade Commission (the "Commission") turn a blind-eye to facts that, if properly considered, would lead to a finding by the Commission that subject imports of hot-rolled steel from Turkey never have caused, and otherwise will not lead to continuation or recurrence of, material injury? The Commission improperly refused to assess these facts through three separate actions filed by Plaintiff-Appellant Ereğli Demir ve Çelik Fabrikaları T.A.Ş. ("Erdemir").[1]

In this case, Erdemir requested that the Commission consider during its mandatory five-year sunset review of the antidumping duty ("AD") order on hot-rolled steel from Turkey, the effect of subsequent litigation that undermines a key factual predicate of the Commission's final injury determination in the original

---

[1] The three separate actions represent Erdemir's efforts to find a mechanism for the Commission to consider the ongoing legal and factual validity of its original determination in light of subsequent litigation that without question undermines the legal and factual predicate for the imposition of the AD order in question. None of the efforts pursued by Erdemir are tethered to or would have required an appeal of the original investigation in accordance with any statute or regulation, nor does their success rely upon the success of any such appeal, despite Appellees' arguments to the contrary. Erdemir's efforts, including its claims in this appeal, must therefore be considered independent of any consideration as to whether Erdemir did or did not seek appeal of the original investigation.

investigation. The Commission declined to do so, taking the position that it could not. However, for the Commission's sunset review determination to be lawful, the findings and conclusion must be supported by substantial evidence on the record. Yet because the Commission disregarded substantial evidence – evidence that would favor revocation of the AD order on Turkey – the decision cannot stand.

Defendant-Appellees, Steel Dynamics, Inc., SSAB Enterprises LLC, Cleveland-Cliffs Inc., Nucor Corporation, and the United States Steel Corporation (collectively "Domestic Interested Parties") and the Commission (collectively, with the Domestic Interested Parties, the "Appellees") now defend the Commission's failure to consider all material evidence in the sunset review. They do so by supporting the lower court's incorrect findings, while misinterpreting the law and mischaracterizing Erdemir's arguments against the Commission's failure to properly conduct its sunset review. Appellees' defenses are misguided and unsubstantiated.

Despite the Appellees' arguments to the contrary, the Commission's sunset review determination was not supported by substantial evidence or in accordance with law, and this Court should find as such and vacate the lower court's decision.

## ARGUMENT

Appellees in their response briefs endeavor to support the lower court's decision in this case by mischaracterizing Erdemir's arguments and presenting inaccurate interpretations of law and fact. Throughout their briefs, Appellees ground

their arguments on the following assertions: (1) the Commission considered all material evidence on the record of the sunset review in question; (2) Erdemir seeks reconsideration or amendment of the Commission's original injury determination; and (3) Erdemir seeks to have the Court reweigh the evidence.

The basis of these arguments, however, are unfounded. The Commission did not consider all evidence on the record, and Erdemir seeks neither for reconsideration or amendment of the original injury determination, nor for a reweighing of the evidence. Erdemir simply seeks the Commission to consider all relevant evidence in the sunset review in accordance with law.

## I.    THE COMMISSION FAILED TO CONSIDER ALL MATERIAL FACTS BEFORE IT DURING THE SUNSET REVIEW

Appellees ask the Court to assume that the Commission considered all material record information during the sunset review. And as the Commission concedes in its response brief, it was required to address the "'issues material to {its} determination.'" *See Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. USITC et al.*, Case No. 24-2249, ECF No. 41, at 17 (Fed. Cir. Feb. 28, 2025) ("Commission Br.") (quoting *Timken U.S. Corp. v. United States*, 421 F.3d 1350, 1354 (Fed. Cir. 2005)); *see also Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (stating that the court must consider "the record as a whole, including evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence.'" (quoting *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir.

1984))).  The Commission, however, did not consider all material issues and information.

Specifically, the Commission failed to consider the effect of Commerce's remand redetermination in the original AD investigation on the foundation of the AD order, and how that may impact the Commission's findings in the sunset review. The record included evidence which showed that as a result of litigation subsequent to the original investigation, the AD order was revoked with respect to one of the main exporters of hot-rolled steel from Turkey – Colakoğlu Metalurji A.S. ("Colakoğlu").  *See Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-45-546 and 731-TA-1291-1297 (Review), and 731-TA-808 (Fourth Review), USITC Pub. 5380, at I-7 (Nov. 2022) ("Sunset Publication") (Appx0836).

However, the Commission's original injury determination with respect to AD imports from Turkey was reliant upon the inclusion of Colakoğlu's imports as subject merchandise, which led the Commission to find that AD imports from Turkey were not negligible.  *See Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545-547 and 731-TA-1291-1297 (Final), USITC Pub. 4638, at 1, 3, 13 (Sept. 2016) ("HRS ITC Final") (Appx0308, Appx0310, Appx0320).  And based on a parallel determination by the Commission in the countervailing duty ("CVD") investigation,

the Commission was well-aware that had those imports been excluded, subject imports from Turkey would have been found to be negligible in the AD investigation (and the investigation would have been terminated). *See* Sunset Publication, at 4 n. 5 (Appx0719).

These facts were before the Commission during the sunset review, and Erdemir demonstrated their legal effect. Yet, the Commission failed to consider this when determining if revocation of the AD order on imports from Turkey would likely to lead to the continuation or recurrence of material injury.[2] In doing so, the Commission failed to answer a foundational question: if the Commission is now presented with facts that undermine the findings in its original affirmative material injury determination and those facts support a negative determination, can the Commission then find that revocation would likely lead to the continuation or recurrence of material injury? Addressing this matter does not require it to disrupt the original determination or expand its legal authorities. Rather, it requires the Commission to execute the law.

The Commission, however, did not consider all relevant facts before it and

---

[2] Erdemir recognizes that the Commission excluded the exporter – Colakoğlu – from its data collection efforts and analysis of such concurrent data for the sunset review (though, in some instances, it still included Colakoğlu's data from the original investigation). But this simply recognizes that Colakoğlu is no longer subject to the AD order. It does not recognize that the facts upon which the original injury determination were made are no longer valid.

did not assess the legal effect of the now-settled litigation. Instead, it relied on a legal fiction to support its position that it could not consider current, corrected facts. In an attempt to support this posture, the Commission explained that the original determination remains legally valid. *See* Sunset Publication, at 48 fn. 298 (Appx0763). Appellees in their briefs also rely on this legal fiction and the basis that the final determination remains legally valid.[3] *See* Commission Br. at 33-39; *see also Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. USITC et al.*, Case No. 24-2249, ECF No. 42, at 37-44 (Fed. Cir. Feb. 28, 2025) ("DIP Br.").

The Commission aptly notes that "Erdemir can point to evidence 'which detracts from the evidence which supports the Commission's decision,'" but in making this point, baldly assumes that the Commission did consider such evidence in the sunset review. Commission Br. at 18 (internal citations omitted). Yet, the Commission cannot state how these facts were accounted for, particularly where it even did not consistently remove import volumes that were required by law to be

---

[3] Domestic Interested Parties also contend that the judicial remand of Commerce's original determination "did not disturb the finality of the Commission's material injury determination," and as a result the Commission was not required to revise its findings from the investigation. *See* DIP Br. at 37. Erdemir agrees that the litigation did not disturb the finality of the original injury determination, but as explained, it is not seeking a revision to the investigation. It is seeking consideration by the Commission of the corrected facts, and how those facts may affect its findings in the sunset review when it has knowledge that the underlying material injury determination, though legally valid, was established on faulty information.

removed.

Furthermore, neither the Commission nor the Domestic Interested Parties explain why the corrected information as a result of the remand redetermination is **not** material. If the correct information would have resulted in a wholly different conclusion in the original investigation (which it would have), such information surely qualifies as material.

Moreover, whether the original determination remains legally valid is fundamentally a different question than whether the facts before the Commission during the sunset review support a finding that revocation would likely lead to the continuation or recurrence of material injury. The Commission's obligation during a sunset review is to make a determination based on substantial evidence on the record. Substantial evidence equates to facts. The facts may show that a determination remains legally valid. But they may also show that the facts underlying that determination have since changed and no longer support the legally valid determination. In such an instance, recognizing a determination remains legally valid, while also recognizing that the circumstances underlying that determination are no longer accurate would satisfy the substantial evidence standard. The standard is not satisfied, however, if only the legal validity is recognized without consideration of the change in facts. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951) ("The substantiality of evidence must take into account

whatever in the record fairly detracts from its weight.").  And such is the case here, when the Commission affords weight only to the legal validity of the original injury determination without any consideration of the subsequent, material change in facts.

In sum, because the Commission failed to consider this material information when making its determination, the Commission abrogated its legal responsibility to consider all such information, and its findings are not supported by substantial evidence.

## II. ERDEMIR SEEKS TO HAVE THE COMMISSION CONSIDER ALL MATERIAL EVIDENCE ON THE RECORD

As explained above in Section I, Erdemir challenges the Commission's decision in the sunset review to seek a proper and fulsome analysis of the evidence it presented in that review that confirms the AD order should have been revoked. Appellees, however, mischaracterize Erdemir's efforts as either an attempt to (1) seek reconsideration of or amendment to the injury determination in the original investigation; or (2) have the Court reweigh the evidence in the sunset review.  The success of Appellees' arguments rests on these mischaracterizations of Erdemir's position.  The Court should reject all such arguments.

### A. Erdemir Does Not Seek Reconsideration of or Amendment to the Original Investigation

It is surely relevant to this appeal that the Commission's original injury finding included volumes of imports from Turkey that were later determined to be fairly

traded and therefore excluded from the orders. This later determination raises questions about the condition precedent in the sunset review, the condition precedent being the factual validity of the original material injury finding. Based on the record of the sunset review, the facts underlying the original determination were no longer valid, and as such the condition precedent – *i.e.*, the facts supporting material injury – no longer existed. *See Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. USITC et al.*, Case No. 24-2249, ECF No. 33, at 17-18 (Fed. Cir. Nov. 20, 2024)("Erdemir Br.").

The sunset review record included reference to the remand redetermination by the U.S. Department of Commerce ("Commerce") in which Commerce revised its dumping findings with respect to one of the main exporters of Turkish hot-rolled steel – Colakoğlu. In the original dumping investigation, Commerce found that Colakoğlu engaged in dumping. *See Certain Hot-Rolled Steel Flat Products From the Republic of Turkey: Final Affirmative Determination of Sales at Less Than Fair Value*, 81 Fed. Reg. 53428, 53428-53429 (Dep't of Commerce Aug. 12, 2016) (Appx0292-Appx0293). Colakoğlu challenged this finding and on remand, Commerce reversed its position and found that Colakoğlu did not engage in dumping when it calculated a *de minimis* dumping margin. *See Certain Hot-Rolled Steel Flat Products from Turkey: Notice of Court Decision Not in Harmony with the Amended Final Determination in the Less-Than-Fair-Value Investigation; Notice of Amended Final Determination, Amended Antidumping Duty Order; Notice of Revocation of*

*Antidumping Duty Order in Part; and Discontinuation of the 2017-18 and 2018-19 Antidumping Duty Administrative Reviews, in Part*, 85 Fed. Reg. 29399, 23399-23400 (Dep't of Commerce May 15, 2020) (Appx1976-Appx1977).

However, when the Commission made its original injury determination, it did so based on Commerce's original, incorrect finding that Colakoğlu *was* engaged in dumping. *See* HRS ITC Final at 1, 3, 13 (Appx0308, Appx0310, Appx0320). Because the facts upon which the Commission based its original determination subsequently were reversed on remand, Erdemir requested that the Commission account for these subsequent legal and factual findings when conducting its sunset review to determine whether the condition precedent for material injury still existed such that the Commission could even find any potential recurrence or continuation of material injury.

Appellees' arguments in Section II.D of the Commission's brief and Sections II.A & B in the Domestic Interested Parties' brief now attack Erdemir's "condition precedent" argument by portraying it as either a way to seek amendment to or reconsideration of the original injury determination. *See* Commission Br. at 32-39; *see also* DIP Br. at 33-44. Their reliance on this mischaracterization of Erdemir's arguments is evident:

- "{I}nsofar as Erdemir argues that the Commission is required to revisit and revise original injury and negligibility determinations…". Commission Br. at 35.
- "Erdemir is requesting an impermissible remand for the Commission

to…reconsider its original negligibility and injury determinations." Commission Br. at 36.

- "Erdemir's arguments here…constitute 'a thinly veiled attempt to continue to press for reconsideration of the original injury determinations…'". Commission Br. at 37 (internal citations omitted).
- "When {Erdemir} chose not to {appeal the original determination}, it lost any right it had to change the Commission's original determination." DIP Br. at 36.
- "{S}unset reviews have no such power to void final determinations from AD or CVD investigations…". DIP Br. at 40.
- "The law makes clear that the sunset review…was powerless…to look backward and undo a final and binding injury determination…". DIP Br. at 42.
- "Erdemir has failed to cite a single example of a sunset review revising, reconsidering, or voiding an unchallenged final affirmative injury determination in an investigation…". DIP Br. at 44.

Despite their attempts to portray Erdemir's arguments in this way, they are flatly wrong. Erdemir does **not** seek to void or obtain reconsideration of the original determination. Rather, Erdemir requests what the law requires: to have the Commission consider the facts as they stand on this record and determine whether, based on those facts, the Commission can still find that revocation would likely lead to the continuation or recurrence of material injury. *See* Erdemir Br. at 18 ("The statutory language, 'continuation or recurrence of material injury,' requires a condition precedent of prior material injury which no longer existed for subject Turkish imports at the time of the sunset decision. Yet, the Commission failed to give effect to this fact.").

In making these characterizations of Erdemir's arguments, Appellees

highlight that the original injury determination remains legally valid because it was not challenged on appeal.[4]  *See* Commission Br. at 33; *see also* DIP Br. at 34, 37. This is true; the original injury determination does remain ***legally*** valid (though Erdemir has sought other administrative remedies to address this issue, which are the subject of the two companion appeals).  Whether legally valid or not, the original injury determination does not preclude or excuse the Commission from considering in this sunset review the subsequent change through Commerce's remand redetermination that affected the universe of imports – the universe which ultimately formed the foundation of the Commission's original material injury finding.  When these changes are accounted for, they demonstrate foundational flaws in the original material injury finding.

But the fundamental problem with Appellees' contention is that they ultimately ask the Court to approve the Commission's analysis in which it refused to

---

[4] Appellees also focus a portion of their arguments on whether Erdemir had the ability to challenge the Commission's original determination.  *See* Commission Br. at 34-35; *see also* DIP Br. at 35-36.  Erdemir addresses this issue in its briefs to this Court in companion case 24-2243, including its reply brief filed concurrently with this brief.  Erdemir incorporates by reference its arguments in those briefs as to why an appeal of the original injury determination was not available.

To support its contention that Erdemir could have appealed the original AD injury determination, the Commission also cites to Erdemir's appeal of Commerce's countervailing duty ("CVD") determination.  *See* Commission Br. at 35 fn. 14. Erdemir addresses this argument and distinguishes between the AD and CVD appeals in its brief to this Court in companion case 24-2243, and incorporates those arguments by reference, too.

account for the subsequent and meaningful changed facts on the basis that the original determination remains legally valid. *See* Commission Br. at 34-39; *see also* DIP Br. at 37-44.[5] Stated differently, Appellees argue that the Commission can rely on a legal fiction and ignore material facts in making its determination in the sunset review. The Commission's sunset review determination therefore rests on a faulty premise. This decision cannot be squared with the standard for upholding a determination based on substantial evidence, and when material facts are disregarded, this standard is not satisfied. *See Universal Camera*, 340 U.S. at 488.

Appellees cite to *Consol. Fibers*, a case involving a sunset review with facts far-removed from this proceeding. *See* Commission Br. at 36; *see also* DIP Br. at 43 (citing *Consol. Fibers, Inc. v. United States*, 571 F. Supp. 2d 1355 (Ct. Int'l Trade 2008)). In *Consol. Fibers*, the Commission was presented with information during a sunset review pertaining to antitrust violations by the domestic industry. *See Consol. Fibers*, 571 F. Supp. 2d at 1359. Plaintiffs argued that the antitrust-related information invalidated the original determination upon which the sunset review was premised. *See id*. at 1360. The CIT denied this claim, recognizing that the court already considered this claim and rejected it in parallel litigation related to plaintiff's request for reconsideration. *See id*. The court also noted that the Commission does

---

[5] In claiming that it cannot give any weight to the revised facts from Commerce's remand redetermination, the Commission effectively concedes that it did not afford them any consideration during the sunset review.

not have to reconsider its entire original injury determination underlying an order while conducting a sunset review, but that it must consider the conditions of subject merchandise pre-order to determine if those conditions are likely to recur. *See id.* (citing *Uruguay Round Agreements Act, Statement of Administrative Action*, H.R. Doc. No. 103-316, vol. 1 at 884, *reprinted in* 1994 U.S.C.C.A.N. 4040, 4209 ("SAA")).

Here, reconsideration of the original injury determination is not required to determine that, pre-order, imports from Turkey were negligible and did not cause material injury. As explained above, the Commission's original AD injury determination with respect to Turkey was tied to an understanding that Colakoğlu was found by Commerce to have engaged in dumping and had an above-*de minimis* dumping margin. Subsequent litigation resulted in Commerce reversing this finding and determining that Colakoğlu did not engage in dumping and did not have an above-*de minimis* dumping margin. In parallel circumstances in the CVD investigation, Colakoğlu was also found not to have been subsidized and not to have an above-*de minimis* subsidy margin, and as a result, the Commission found subject imports from Turkey to be negligible. None of these facts are contested. And none require the Commission to redo its analysis in the original investigation as part of the sunset review in order to give them effect and take them into consideration when analyzing the pre-order conditions.

Appellees also highlight various portions of the SAA.  *See*, *e.g.*, Commission Br. at 32 fn. 12; *see also* DIP Br. at 43.  The Domestic Interested Parties cite to the SAA language identified by the court in *Consol. Fibers*, which states "{i}f the Commission finds that pre-order . . . conditions are likely to recur, it is reasonable to conclude that there is likelihood of continuation or recurrence of injury."  SAA at 884, *reprinted in* 1994 U.S.C.C.A.N. at 4209.  This language in fact makes Erdemir's point that the Commission is required by statute to provide retrospective considerations during the sunset review of the original injury investigation during which pre-order data were collected.  Yet, remarkably, the Domestic Interested Parties twist this language to somehow mean that the Commission cannot consider these facts to consider whether, based on those facts, the pre-order period even demonstrated material injury.  But, as explained above, the facts before the Commission during the sunset review show that pre-order conditions for Turkey involved negligible imports, and thus pre-order, there would have been no basis to find material injury.  This fact is true whether or not the Commission originally issued an affirmative injury determination that remains legally valid.  The facts now show differently, and there would be no basis to conclude that there is a likelihood of continuation or recurrence of injury.

The Commission also quotes other sections of the SAA which state that "{t}he likelihood of injury standard applies regardless of the nature of the Commission's

original determination (material injury, threat of material injury, or material retardation of an industry)." SAA at 883, *reprinted in* 1994 U.S.C.C.A.N. at 4208. The Commission claims that this language means that it cannot consider whether the facts underpinning the original determination remain true, and thus whether the original determination remains factually sound. But, in fact, the SAA language simply means that the sunset review standard remains the same regardless of the basis for which the Commission made an affirmative injury determination (*i.e.*, material injury, threat, or material retardation). It does not mean that the Commission can disregard the facts underlying the determination or any updates to those facts since the investigation. Indeed, the SAA language cited by the court in *Consol. Fibers* and by the Domestic Interested Parties, requiring consideration of the pre-order period, undermines the Commission's interpretation of this language as it expressly calls for the Commission to consider the facts surrounding the original injury investigation.

Finally, Appellees contest the Commission's ability to consider the condition precedent because sunset reviews are prospective in nature. *See* Commission Br. at 32-33 fn. 12; *see also* DIP Br. at 40-42. The prospective nature of a sunset review, however, does not preclude a consideration of prior determinations and how current facts may have affected those determinations. In particular, it does not preclude considerations of how those effects may impact the Commission's ability to find the

likelihood of continuation or recurrence of material injury. As discussed above, the Commission is obligated to give retrospective considerations to conditions prior to the imposition of the order. *See* SAA at 884, *reprinted in* 1994 U.S.C.C.A.N. at 4209. If the Commission must give consideration to these facts as part of its prospective findings in a sunset review, then the Commission certainly must also consider current facts and the impact of those facts, even if that involves its previous findings. Therefore, the reliance on the position that sunset reviews are prospective in nature as a basis for ignoring material information on the record is unavailing.

### B. Erdemir Does Not Seek to Reweigh Evidence

The Commission failed to analyze the record properly even if it had considered all material information (which it did not). The Commission failed in two main ways – it did not properly (1) interpret and analyze the standard for "no discernible adverse impact" and cumulation, and (2) exclude Colakoğlu's data from its analysis despite its claims to the contrary. This provides an independent basis for reversal.

Appellees again take Erdemir's arguments and recharacterize them as something they are not. In this instance, Appellees attempt to depict these claims as efforts to have the Court reweigh evidence. *See* Commission Br. at 19-32; *see also* DIP Br. at 44-54. Appellees claim:

- "Erdemir…merely seeks to resurrect arguments aimed at reweighing the evidence…". Commission Br. at 22.

- "Erdemir's attempt to reweigh the evidence is especially misguided since…discernable adverse impact is a 'low bar'…".  Commission Br. at 28 (internal citations omitted).
- "Erdemir's argument on this particular issue amounts to another impermissible attempt to reweigh the evidence."  Commission Br. at 30.
- "At base, Erdemir's argument regarding the Commission's cumulation analysis is a simple request for this Court to reweigh the evidence that was before the Commission."  DIP Br. at 46.
- "This is a simple request for the Court to reweigh the evidence that was before the Commission"  DIP Br. at 50.
- "'Erdemir complains that instead of crediting *that* evidence, the Commission should have instead credited *different* evidence and asks the Court to reweight the evidence before the Commission."  DIP Br. at 52.

But these arguments are not an attempt to reweigh evidence.  Rather, Erdemir simply seeks to have the Commission properly apply its standards and consider the correct information.

With respect to the Commission's application of the "no discernible adverse impact" standard and cumulation, the Commission erred and in doing so incorrectly posits that it can effectively disregard material information.  The Commission contends that when it applies this standard, it is precluded from considering negligibility.  *See* Commission Br. at 31-32, 36 fn. 15 ("Negligibility simply is not an issue in sunset reviews…").  This understanding is not true and contradicts previous positions the Commission has taken.

The Commission has previously explained, and the CIT has quoted, that the "no discernible adverse impact" standard is to be read as "'largely a negligibility

provision without the use of a strict numerical test…".  *Usinor Industeel, S.A., v.*
*United States*, 26 CIT 467, 472 (2002) (quoting *Malleable Cast Iron Pipe Fittings*
*from Brazil, Japan, Korea, Taiwan, and Thailand*, Inv. Nos. 731-TA-278-280
(Review) and 731-TA-347-348 (Review), USITC Pub. 3274 (Feb. 2000)).  Even if
the negligibility analysis between a sunset review and an original investigation differ
slightly, this does not mean that the Commission does not consider negligibility.
This is particularly so here, where the negligibility evidence guts the core of the
original injury determination, and the Commission took the position that it was not
material to the sunset review finding.  The Commission's express position that it
cannot and therefore did not consider negligibility considerations when making its
sunset review determination, demonstrates without question that the sunset review
determination is not supported by substantial evidence and is not in accordance with
law.

Moreover, as Erdemir's opening brief demonstrates, there was a substantial
amount of information that the Commission seemingly did not consider or failed to
properly exclude when it made its findings with respect to whether there was
discernible adverse impact and cumulation.  *See* Erdemir Br. at 24-25.  Contrary to
Appellees position that Erdemir is seeking the Court to reweigh this evidence,
Erdemir requests that the Commission simply consider this evidence.  Nowhere in
the Commission's sunset review findings does it seem to grapple with the data that

detracts from its discernible adverse impact finding (*i.e.*, the data outlined in Erdemir's opening brief on pages 24-25). The Commission may reference these data in its determination; but it does not offer any analysis or explanation as to why the data are overshadowed by the effects of its findings related to the attractiveness of the U.S. market and any excess capacity of Turkish producers. *See* Sunset Publication, at 48 fn. 298 (Appx0763).

The Commission's analysis is also flawed because it does include Colakoğlu's non-subject imports as part of its analysis regardless of Appellees' position that the inclusion of these data were immaterial. *See* Commission Br. at 25-28; *see also* DIP Br. at 46-50. Erdemir's concern about the inclusion of Colakoğlu's data is not just a "complaint…about the style of the Commission's opinion in summarizing background information…". Commission Br. at 27-28. As discussed throughout this brief and below, the Commission is required to consider pre-order conditions. And the data for these pre-order conditions were commingled with Colakoğlu's data. Thus, the data could not have just been for background information.

As Domestic Interested Parties identified in their brief, when the Commission is considering the volume, price effect, and impact of imports of the subject merchandise on the industry before the order was issued in accordance with 19 U.S.C. § 1675a(a)(1)(A), the Commission must consider the pre-order conditions and determine whether they are likely to recur. *See* SAA at 884, *reprinted in* 1994

U.S.C.C.A.N. at 4209.  By including Colakoğlu's data in the alleged "background" data from the original investigation, it seemingly included these data in its analysis of the pre-order conditions, rendering this analysis flawed.  The pre-order conditions, if properly considered, must treat Colakoğlu's imports as non-subject.  But the Commission did not do so when it conducted its analysis in the sunset review.

Had the Commission excluded Colakoğlu's imports from this analysis, as it should have done, the facts would have demonstrated that the pre-order conditions did not present any material injury by virtue of subject imports from Turkey.  The Commission therefore would not have any basis to find that subject imports from Turkey had an discernible adverse impact.  And consequently, the Commission would have been precluded from cumulating subject imports from Turkey with those from other countries subject to the review.  This improper inclusion of Colakoğlu's data thereby rendered the Commission's cumulation and sunset review analysis unlawful.

**CONCLUSION**

For the foregoing reasons, Erdemir respectfully requests that the Court reject Appellees' arguments, find that the Commission's sunset review determination was not supported by substantial evidence or otherwise in accordance with law, and vacate the lower court's decision.

Dated: April 4, 2025

Respectfully submitted,

*/s/ Christine M. Streatfeild*
Christine M. Streatfeild
Justin R. Becker
Baker & McKenzie LLP
815 Connecticut Avenue, N.W.
Washington, DC 20006-4078
Tel.: (202) 835-6111
christine.streatfeild@bakermckenzie.com

*Counsel to Plaintiff-Appellant,*
*Ereğli Demir ve Çelik Fabrikalari T.A.Ş.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 24-2249

**Short Case Caption:** Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 5,061 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 04/04/2025

Signature: /s/ Christine M. Streatfeild

Name: Christine M. Streatfeild